NORTHWESTERN NATIONAL INSURANCE COMPANY, a corporation, Plaintiff,

v.

Gertrude MILDENBERGER, C. M. Walters, Jr., Successor Trustee, Gloria Lee Realty Company, a corporation, and Hugh Marlow, Defendants,

Gertrude Mildenberger and Hugh Marlow, Defendants-Appellants,

C. M. Walters, Jr., Successor Trustee, and Gloria Lee Realty Company, a corporation, Defendants-Respondents.

No. 31020.

St. Louis Court of Appeals.

Missouri.

July 17, 1962.

Motion for Rehearing or Transfer Denied Sept. 11, 1962.

Wilson, Cunningham, McClellan & Gunn, St. Louis, for plaintiff.

Arthur Kreisman, St. Louis, for appellants.

Harry Gershenson, St. Louis, for respondents.

BRADY, Commissioner.

The question presented by this appeal deals with the ownership of a fund of $3,-389.43, which is the amount of a fire loss on a building insured by the Northwestern National Insurance Company, hereinafter referred to as Northwestern. This fund was paid into the court in an interpleader action by Northwestern.

The pleadings and proof present the following set of facts. Mrs. Mildenberger was the owner of a building at 4957 Terry Avenue in St. Louis, Missouri, and had purchased from Northwestern policies of fire insurance upon that building. There was a note and mortgage securing an in-

debtedness on the building, and the Gloria Lee Company was the mortgagee and owner and holder of the note and deed of trust. On January 20, 1960, while these policies were in full force and effect, the building was damaged by fire. At this time the total amount due on the note was in excess of $10,000.00. Mrs. Mildenberger made claim for the loss and employed the defendant-appellant Marlow to assist in " * * * determining the amount of said loss and adjusting and collecting the proceeds of said insurance policies * * * " and gave to Marlow " * * * some character of right, title or interest * * * " in the proceeds of the insurance which, by his answer, Marlow alleged was 10% of the amount recovered by Mildenberger plus certain "emergency service" charges. Marlow claims a total of $547.00 by his interplea. The loss was adjusted at $3,389.43, but when this was finally agreed upon does not appear. Following the adjustment of the loss but before payment by Northwestern, the Gloria Lee Company, foreclosed, Mrs. Mildenberger being in default, and the foreclosure sale was held on May 6, 1960. The Gloria Lee Company bid in the property at the foreclosure sale for $10,927.77, the exact amount due to it on the note and deed of trust plus the costs of the sale. The trustee executed his deed to the Gloria Lee Company, and it made claim upon Northwestern for the proceeds of the adjusted fire loss. Since each party claimed the entire fund, Northwestern paid the fund into the court and by interpleader prayed the court to which party it was to go, and for $500.00 for its attorneys' fees.

The note and deed of trust on this property were introduced into evidence and show that the original amount of indebtedness was $13,000.00 on date of July 3, 1951. The pertinent provisions of the deed of trust are set forth later herein. The uniform standard mortgage clause was attached to the deed of trust, and in its pertinent part reads:

"Loss or damage, if any under this policy shall be payable to mortgagee or trustee, as interest may appear, and this insurance as to the interest of the mortgagee or trustee only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceeding or notice of sale relating to the property, nor by any change in the title or ownership of the property."

The trustee's advertisement of sale is also set out in full in the transcript. It is in the usual form, mentioning only the real estate as the subject of the sale and saying nothing about the insurance or the proceeds therefrom.

Walters was the only witness at the trial. Over the objection of the appellants he testified that before crying the sale he announced the terms and conditions thereof " * * * and among other things announced that the improvements on the real estate being offered for sale had been partially destroyed by fire and that the property was being offered for sale in its then condition unrestored but that the fire loss to the premises had been adjusted at $3,389.43 and that said amount being the proceeds of the fire insurance on said premises would by the terms of sale pass to the purchaser as part of said real estate." Walters further testified that the mortgagee purchased this property at the foreclosure sale, bidding $10,927.77, which was the exact amount due it under the note and deed of trust plus the costs of the sale; that he executed his deed to the buyer; that prior to the sale he had " * * * probably ten or fifteen telephone calls about the property * * * " and told the callers that the purchaser at the sale would also receive the insurance money; and that Gloria Lee Company has since resold the property for $7,000.00 and has sustained a loss of about $4,000.00. The appellants preserved their objection to the entire testimony dealing with the resale of the property, the announcements of the trustee at the sale, and the telephone conversations.

The trial court directed that the clerk pay the entire fund " * * * less the costs of this proceeding" to the trustee Walters and to the Gloria Lee Company. It is the contention of the appellants that the trial court erred in so doing because Walters and the Gloria Lee Company claim the fund under an indebtedness which had been fully satisfied by the sale of the mortgaged premises. In short, they refer to the provisions of the standard mortgage clause, reading "Loss or damage, if any under this policy shall be payable to mortgagee or trustee, as interest may appear * * * " and urge that the interest of the mortgagee and trustee could not appear because it was extinguished when the indebtedness was fully satisfied by sale of the mortgaged premises. The appellants further contend that whatever Walters did or said at the foreclosure sale, it could not affect the rights of these parties. Neither, they urge, should any significance be given to the testimony by Walters concerning a loss suffered by the Gloria Lee Company on resale of this building. They contend that any such loss can not be urged by the Gloria Lee Company any more than Mrs. Mildenberger could contend that she was entitled to a share of the profit, had the Gloria Lee Company made one on the resale. The respondents contend that under the provisions of the deed of trust and the standard union mortgage clause the Gloria Lee Company is the proper party to ultimately collect the proceeds of the insurance. They also urge that the trial court, under its general equity powers, had a right to prevent the unjust enrichment of Mrs. Mildenberger, who no longer owned this property, and to prevent the unjust detriment to the holder of the deed of trust and the purchaser of the property at the foreclosure sale which would result from awarding her this fund.

The instant case was presented by brief and in argument by all the parties concerned as a case of first impression in this state. However, the principles of law involved in the determination of the issue here involved have received the attention of text writers and the appellate courts of certain of our sister jurisdictions. See Cooley's Briefs On Insurance, 2d Ed., Vol. 7, page 6298, where that writer cites Griswold v. American Central Insurance Company, 1 Mo.App. 97, an 1876 decision of this court, affirmed by the Supreme Court in 1879 in Griswold v. American Central Insurance Company, 70 Mo. 654. A careful analysis of that case will indicate that it was not decided upon the issue here involved. See also Couch Cyclopedia of Insurance Law, Vol. 5, § 1215–B, page 4436; Appleman on Insurance Law and Practice, Vol. 4, § 2268; Power Building & Loan Association v. Ajax Fire Insurance Company, 110 N.J.L. 256, 164 A. 410; Reynolds v. London & Lancashire Fire Insurance Co., 128 Cal. 16, 60 P. 467, 79 Am.St.Rep. 17; and State ex rel. Squire, Superintendent of Banks v. Royal Insurance Co. et al., 58 Ohio App. 199, 16 N.E.2d 342.

In Prudential Insurance Co. v. German Mutual Fire Insurance Ass'n, 228 Mo.App. 139, 60 S.W.2d 1008 at l. c. 1009, the effect of a union mortgage clause and how it differs from an "open mortgage clause" is stated. See also Prudential Insurance Co. v. German Mutual Fire Insurance Association of Lohman, 231 Mo.App. 699, 105 S.W.2d 1001 at l. c. 1005. It is the accepted rule in this state, as it is in most, that the standard union mortgage clause constitutes a separate and distinct contract between the mortgagee and the insurance company up to the amount of the debt secured. The consideration for issuance of the fire policy to the owner of the property is also the consideration for the company's promise to pay the mortgagee under the mortgage clause, Prudential Ins. Co. v. German Mutual Fire Insurance Association, supra; Swihart v. Missouri Farmers Mutual Tornado, Cyclone & Windstorm Insurance Co., 234 Mo.App. 998, 138 S.W.2d 9 at l. c. 12, 13; Wisman v. Hazel Dell Farmers Mutual Fire and Lightning Ins. Co., 230 Mo.App. 489, 94 S.W.2d 908; Gordon v. Northwestern National Ins. Co., 228

Mo.App. 1008, 77 S.W.2d 512. Following this analysis to its logical conclusion, since this separate contract of insurance could not logically be affected by the acts of another, the mortgagor, not actually a party to the contract of insurance between the mortgagee and the company, the mortgagee's later acquisition of title would merely constitute an increase in his interest and could not adversely affect the mortgagee's right to the proceeds of the insurance, provided the loss was less than the amount due on the note and deed of trust. So it was held in a case involving an attempt by an insurance company to avoid payment to a mortgagee who had become an owner through purchase at foreclosure sale for the full amount of the indebtedness, Prudential Insurance Co. v. German Mutual Fire Insurance Ass'n, supra. However, in that case the foreclosure sale took place, and the mortgagee became the owner, before the fire occurred. The issue actually presented and decided in that case was whether the insurance was still in force or whether the provisions in the policy providing that notice be given the company of a change in ownership was violated under the factual situation there present, thus voiding the policy.

■■ Realizing that strict adherence to this contractual theory ignored the real basis for the insurance, in Swihart v. Missouri Farmers Mutual Tornado, Cyclone and Windstorm Ins. Co., 234 Mo.App. 998, 138 S.W.2d 9, this theory was placed in its proper perspective when, at 1. c. [3–6] page 13, the opinion states:

"The above case holds that the 'union' clause operates as an independent contract of insurance, which cannot be defeated by a breach on the part of the mortgagor of the conditions of the policy, or solely by his act. Observe that, while it is an independent contract, it is such only for a limited purpose, so that the act of the mortgagor alone and of itself cannot defeat the right of the mortgagee. Nevertheless, it is not an entirely disconnected contract. A recovery by the mortgagee, of necessity, inures to the benefit of the mortgagor. The recovery is to pay, in whole or in part, the debt of the mortgagor, and in substance is as much for his benefit as if he recovered the loss and applied it otherwise than on the mortgage indebtedness. As between the parties the mortgagee is entitled to have the loss paid applied on the indebtedness owed to him by the mortgagor. In the absence of fraud or collusion, a recovery by either bars the other, and protects the insurance company. Where the suit is brought by the mortgagor, the insurance company, for its own protection, is entitled by timely application to have the mortgagee brought in as a party."

When the fire occurred, the Gloria Lee Company, mortgagee, was a creditor of Mrs. Mildenberger in the approximate amount of $10,000.00. For this debt it had the security of its deed of trust on the insured property and enforceable by foreclosure, a lien upon the insurance proceeds to the extent of the debt, and a right to pursue its debtor, Mrs. Mildenberger, on her personal liability. Collection in full by any of these methods would terminate the right to pursue the remaining remedies. The Gloria Lee Company elected to pursue the remedy of foreclosure and sale as provided by its deed of trust. See Chapter 443, RSMo 1959, V.A.M.S., and in particular § 443.410 of that chapter. Had the sale brought less, after expenses provided for in the deed of trust, than the amount due on the note and expenses, then the Gloria Lee Company could have proceeded against Mrs. Mildenberger personally for the deficiency. Or, had it the insurance money then in its hands, it would have been entitled to apply so much thereof as was necessary to completely pay the note and pay the surplus, if any were left, to Mrs. Mildenberger, Hartford Fire Insurance Company v. Bleedorn, 235 Mo.App. 286, 132 S.W.2d 1066 at 1. c. [4, 5] page 1071. On the other hand, if the net proceeds of the sale had brought more

than that indebtedness, such surplus would have belonged to the mortgagor. This has long been the rule in Missouri, Warner v. Veitch, 2 Mo.App. 459. The surplus would have been impressed with a trust in favor of the mortgagor, Dalton v. Peters, 8 Cir., 119 F.2d 494. Recognizing the law was as stated, the deed of trust specifically provides that the balance after all payments on encumbrances and expenses is to be paid to the mortgagor.

The respondent contends that the trustee had the right to collect the insurance. Assuming for the purpose of illustration only that such is the case, since foreclosure had already taken place, the mortgagee could no longer exercise its option to apply these proceeds to the restoration of its security to the condition in which it was before the fire and would have had to be applied to the indebtedness. See Hartford Fire Insurance Co. v. Bleedorn, 235 Mo.App. 286, 132 S.W. 2d [7, 8] page 1072. These funds would have had to be added to the amount realized from the foreclosure sale and then the total of these two funds would have had to be paid out by the trustee in the manner stated in the deed of trust and set forth herein. Had the total of the net proceeds of the sale plus the insurance money exceeded the indebtedness and the cost of the foreclosure, the surplus would have inured to the mortgagor. Had it been less than the amount of the indebtedness, the mortgagor would have been liable for the deficiency. So the fact is that even under the respondent's assumption the result is the same. In no event was the Gloria Lee Company to collect more than the balance due on the note regardless of the source or sources from which such a collection might be made. It can not seriously be contended that the mortgagee could have kept the insurance proceeds and also have recovered in full the payment of the debt owed to it. Since early in our reported cases, the proceeds of the insurance to be paid to the mortgagee has been limited to the amount of the indebtedness, McDowell v. Morath, 64 Mo. App. 290.

This is merely a realistic recognition of the true purpose of the insurance which the deed of trust provides the mortgagor must purchase. That purpose is essentially the same as the purpose of the security covered by the deed of trust, and is to see that the money loaned is repaid. The very provisions of the deed of trust illustrate that this is so. The very first paragraph of the deed of trust following the note reads in its pertinent parts:

> "*TO SECURE the payment of which said note* the party of the First Part has executed this Deed of Trust, and has also agreed with said Third Party, endorsees and assigns, * * * [to pay all taxes and assessments] * * * and also to keep the improvements upon said premises constantly and satisfactorily insured *until said note is fully paid* * * * [against certain losses such as fire, etc. to carry such other insurance as the note holder may require] * * * and the policies therefor to keep constantly assigned unto the said party of the Second Part and deposited with the party of the Third Part, *for further securing the payment of said note, and the proceeds thereof apply toward the payment of said note.* The holder of note is hereby given privilege and authority to make proof of loss and adjust and collect insurance. The trustee may assign policies to purchaser at foreclosure, and owner shall not be entitled to unearned premiums * * *.*"* (Emphases supplied.)

The provision giving the note holder the privilege to adjust and collect the insurance must be read in context with the rest of the paragraph. When that is done, it is apparent that whatever privileges the holder of the note is given are for the purpose of securing the payment of the note. These privileges were never intended to extend beyond their ultimate purpose of protecting the security for the payment of the note. Once the note is paid, they have no further function. If the debt is not paid, the secu-

rity covered by the deed of trust is to be available to pay it; and to see that the security, the property covered by the deed of trust, will be available to do so, the mortgagee is required to purchase insurance and the mortgagee given certain privileges as to that insurance. But it is the debt, the creditor-debtor relationship, that gives birth to the right to compel the mortgagor to purchase insurance and to collect the proceeds and serves as the supporting pillar for the whole structure so far as the mortgagee is concerned. Once that relationship is terminated, the reason for any claim on the part of the mortgagee on the insurance proceeds likewise evaporates. Surely it cannot be denied that purchase at the foreclosure for the full amount of the balance due on the note constituted payment and extinguished the debt. It would not logically matter whether that payment was made by a stranger or by Mrs. Mildenberger from other funds or in the method here involved, purchase by the mortgagee for the full amount of the balance due on the indebtedness. So long as the payment was made in the full amount of the indebtedness, it extinguished the debtor-creditor relationship and thus terminated the claim upon the proceeds of the insurance money which had inured to the benefit of the mortgagee upon the occurrence of the fire. A liability may be fixed by the occurrence of conditions which provide for its existence, such as the liability of the insurance company in the instant case to pay to the mortgagee became fixed upon the happening of the fire, but after it becomes thus fixed, it may terminate as to the party in whose favor it existed, here the mortgagee. In the instant case what caused that termination was the payment of the debt by purchase at the foreclosure sale for the full amount of the balance due on the note, and ended the creditor-debtor relationship of the mortgagee and mortgagor. See Aetna Insurance Company v. Baldwin County Building & Loan Ass'n, 231 Ala. 102, 163 So. 604.

In Hartford Fire Insurance Company v. Bleedorn, 235 Mo.App. 286, 132 S.W.2d 1066 at l. c. [7, 8] page 1072, this court held that the phrase, "as its interest may appear" in a standard union mortgage clause refers to the amount of the debt owed to the mortgagee and secured by the deed of trust and " * * * does not refer to appellant's (mortgagee's) interest in the property." Logically, and with adherence to the purpose of the provisions of the deed of trust requiring insurance which is to preserve the security covered by the deed of trust, this can be the only interest of the mortgagee. It cared only for the security as it affords a source of possible repayment of the money it loaned, and to that extent only. The interest of the mortgagee, the Gloria Lee Company, was in payment of the debt owed it by the mortgagor, Mrs. Mildenberger. It follows from the definition of that phrase in the Bleedorn case that this interest must not only appear, i. e. exist, at the date of the loss, but must also appear, exist, when the actual payment by the insurance company is to be made and must not have, between the fire and the date of payment, been extinguished by payment of the debt. In the instant case that interest was extinguished by the purchase by the mortgagee at the foreclosure sale and the resulting payment in full of the debt.

Section 507.060 R.S.Mo. 1959, V.A.M.S., our interpleader statute, has been held to be broader in scope than the former equitable remedy, but not to destroy or change the nature of interpleader as recognized in equity. Heinrich v. South Side National Bank in St. Louis, Missouri, 363 Mo. 220, 250 S.W.2d 345, at l. c. [5] page 348. The section is merely a procedural statute, Plaza Express Co. v. Galloway, 365 Mo. 166, 280 S.W.2d 17. Under the authority of the Heinrich case, upon the appearance by pleading and proof that the interpleader is properly filed—and here that matter was not even contested—a decree should have been entered dismissing Northwestern upon deposit of the fund into court. Failure to do so precludes any judgment entered at the interpleader stage from being final. However, in the instant case the ap-

peal is not from any judgment entered at the interpleader stage of the case, as in fact none was then entered, but is from the final judgment and determination upon the merits between the claimants of this fund. It is to be noted that Northwestern was never discharged, nor was any action taken with regard to its plea for an allowance for its attorneys' fees. Northwestern alleged that it was necessary to counsel and advise with its attorneys, to engage their services in the preparation and filing of the interpleader suit it presented, and prayed that $500.00 as reasonable attorneys' fees be ordered paid out of the fund. Mrs. Mildenberger and Marlow admitted Northwestern's allegations with respect to the necessity to employ attorneys, but placed the amount of the fee in issue. The Gloria Lee Company denied both the necessity on the part of Northwestern to employ attorneys and the amount of the fee. The matter was therefore at issue.

 It is well settled that in a case where interpleader properly lies, the stakeholder is entitled to reasonable attorneys' fees as part of his costs. See Concordia Fire Insurance Company v. Alexander, Mo. App., 50 S.W.2d 687; Grooms v. Mullett, 133 Mo.App. 477, 113 S.W. 683; Badeau v. National Life & Accident Insurance Co., Mo.App., 305 S.W.2d 876; Missouri Digest, Interpleader, ⊷35. But in this case there was no evidence given upon the issue at all, and therefore we have no basis upon which to conclude that any certain amount we might allow would be reasonable. Certainly this is true where under the pleadings in this case some of the contestants objected to the allowance of the amount prayed by Northwestern. Accordingly, this is a matter which will have to be determined by the trial court after giving all the parties concerned a chance to be heard upon the issue.

 Somewhat the same situation prevails with respect to Marlow's claim for $547.00 of the fund. The parties did not specifically answer each other's interplea, but filed their separate answers to North-western's petition. In her answer Mrs. Mildenberger admitted employing Marlow, and admitted that he was to be paid out of the proceeds of the insurance. She did not admit his claim for $547.00, nor mention any specific amount. Neither was there any evidence upon this issue. It follows that the right, if any, Marlow has to receive $547.00, or any specific amount from this fund is a matter which must be determined by the trial court upon a hearing.

The judgment should be reversed and the cause remanded to the trial court with instructions to, upon hearing, determine the amount of the attorneys' fees to be allowed to Northwestern and to enter its judgment allowing such fees to Northwestern. The trial court is also to determine the merits of Marlow's claim and to award such portion, if any, of the fund to him as upon a hearing on the issue the court finds Marlow entitled to. The balance of the fund paid into the registry of the court is to be awarded to Mrs. Mildenberger. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is therefore reversed and the cause remanded to the trial court with instructions to, upon hearing, determine the amount of the attorneys' fees to be allowed to Northwestern and to enter its judgment allowing such fees to Northwestern; and to determine the merits of Marlow's claim and to award such portion, if any, of the fund to him as upon a hearing on the issue the court finds Marlow entitled to; and to award the balance of the fund paid into the registry of the court to Mrs. Mildenberger.

ANDERSON, P. J., and MARSHALL CRAIG and WILLIAM M. KIMBERLIN, Special Judges, concur.

WOLFE and RUDDY, JJ., not participating.