TAX INCREMENT FINANCING COMMISSION OF KANSAS CITY, MISSOURI, Appellant,

v.

Barnes H. ROMINE, Jr., Respondent.

No. WD55038.

Missouri Court of Appeals, Western District.

March 2, 1999.

Ward K. Brown, Kansas City, for appellant.

Daniel O. Herrington, Kansas City, for respondent.

Before PATRICIA BRECKENRIDGE, Chief Judge, ROBERT G. ULRICH, Judge, and JOSEPH M. ELLIS, Judge.

ELLIS, Judge.

The Tax Increment Financing Commission of Kansas City, Missouri appeals a jury verdict awarding damages of $350,000 to Barnes H. Romine, Jr. in this condemnation action.

On April 12, 1996, the Tax Increment Financing Commission (hereinafter "TIF") filed a Petition for Condemnation of Real Estate in the Circuit Court of Jackson County. The petition covered two lots owned by Barnes H. Romine, Jr. The tract in question was commonly known as 717 and 721 Pennsylvania, in downtown Kansas City. The property covered approximately 12,000 square feet. On August 27, 1996, TIF paid $137,500, the amount awarded by the condemnation commissioners, to acquire the property. The property was developed as an office building by DST Realty as part of the

11th Street Corridor Tax Increment Financing Plan.

Both Romine and TIF filed exceptions to the condemnation commissioners' award and a trial was scheduled for June 16, 1997. By mutual agreement, the parties exchanged the reports of their respective experts on June 3, 1997. On June 5, 1997, TIF deposed Bernie Shaner, Romine's expert on real estate appraisal. Shaner relied on eight comparable sales to conclude that the fair market value of the property was $310,000. In his deposition, Shaner conceded that four of the sales he relied on were consummated under the threat of condemnation. As a result, the court determined that those four sales were involuntary and therefore inadmissible. Shaner amended his report to include five sales, four of which were contained in his original report and one newly added sale. The estimated fair market value of the property remained $310,000.

Shaner submitted his amended report to Romine's counsel on June 11, 1997. The next day, Romine's counsel deposed Dunlap Vanice, TIF's expert on real estate appraisal. There was no mention of the amended report.[1] TIF's counsel did not receive word of the amended report until it received a fax of the report on June 14, 1997. In response, on June 16, TIF filed a motion in limine to bar Romine from referring to any new or different information contained in the Shaner report. The trial court denied the motion but granted a one day continuance to allow TIF to depose Shaner a second time. TIF received the transcript to this second deposition during the lunch break of the first day of trial.

Shaner testified that the property was worth $310,000 or $25 per square foot. Romine himself testified that his property was worth $732,000 or $60 per square foot. TIF offered the testimony of two appraisers. Robert Marx testified that the property was worth $60,000 or $5 per square foot. Dunlap Vanice testified that the property was worth $73,000 or $6 per square foot.

---

1. Accounts vary as to whether Romine's counsel had seen Shaner's amended report at the time of the deposition.

The jury returned a verdict of $350,000 in favor of Romine and judgment was entered accordingly. The trial court denied TIF's motion for a new trial and this appeal followed.

■ TIF raises six points on appeal. In its first point, TIF claims that Shaner's testimony should have either been excluded entirely or limited to his original report, and that it was prejudiced by the failure to do so.

■ When an expert witness has been deposed, and before trial he bases his opinions upon new or different facts, the party seeking to use the expert witness must disclose the new information to the opposing party. *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307–08 (Mo.App. W.D.1993). A trial court has broad discretion when evidence is challenged as not being disclosed in response to discovery. *Gassen v. Woy*, 785 S.W.2d 601, 604 (Mo.App. W.D.1990). The trial court may admit or reject such evidence or impose appropriate sanctions. *Id.* We will presume that a ruling within the trial court's discretion is correct. *King*, 853 S.W.2d at 307. The appellant bears the burden of proving that the trial court abused its discretion. *Id.* Furthermore, the appellant must show he was prejudiced by such abuse of discretion. *Id.* Finally, we give great deference to the trial court's rulings on issues involving pre-trial discovery as well as the actions it adopts to remedy any non-compliance with discovery rules. *Id.*

In this case, Shaner only added one sale that was not contained in his earlier appraisal. More importantly, the addition of the new comparable sale did not change his estimate of fair market value. It remained $310,000. The trial court observed that it "was having a hard time figuring out how [TIF was prejudiced] if the basic report stays the same." Nevertheless, the court continued the trial for one day and required that Shaner be made available for deposition by TIF. TIF's counsel took the deposition and the trial began the following day. We perceive no abuse of discretion by the trial court and no prejudice to TIF. Point I is denied.

■ In its second point on appeal, TIF claims the trial court erred by denying its motion for a new trial. TIF contends that the injection of prejudicial and inflammatory remarks by opposing counsel resulted in a biased jury, which is reflected in an excessive verdict against TIF. TIF claims that the size of the verdict entitles them to a new trial on the ground that it was a product of the jury's passion and prejudice.

■ The size of a verdict itself is not sufficient to establish passion and prejudice by the jury. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993). Rather, the appellant must meet a two part test. *Id.* First, the appellant must show that the verdict is "glaringly unwarranted" when viewed in a light most favorable to the respondent. *Id., quoting Anderson v. Burlington N. R.R. Co.*, 700 S.W.2d 469, 477 (Mo. App.1985). Second, the appellant must demonstrate misconduct by the prevailing party that produced the passion or prejudice behind the excessive verdict. *Callahan*, 863 S.W.2d at 872.

Under the first prong of the *Callahan* test, TIF must establish that the verdict was glaringly unwarranted even when viewing the evidence in a light most favorable to Romine. As evidence that the verdict was excessive, TIF points out that the verdict exceeded the sale price of neighboring properties as well as Shaner's own appraisal. While conceding both of TIF's assertions, Romine argues that the verdict was not excessive and indeed was supported by the evidence. We agree.

■ We will not disturb a jury's determination of damages unless it is excessive enough that it "shocks the conscience of the court." *Callahan*, 863 S.W.2d at 871, *quoting Eller v. Crowell*, 238 S.W.2d 310, 316 (Mo.1951). While no exact formula exists to determine whether a verdict is excessive, a jury is best suited to examine the facts in each case and to determine what constitutes reasonable compensation. *Callahan*, 863 S.W.2d at 871–72. A wide range exists between the damage extremes of inadequacy and excessiveness. *Id.* at 872. Appellate courts allow juries "virtually unfettered" discretion if the damages are within that range. *Id., quoting Kenton v. Hyatt Hotels Corp.*,

693 S.W.2d 83, 98 (Mo. banc 1985). In the case *sub judice*, the evidentiary range for damages ran from a low of $60,000 based on one of TIF's expert's testimony, to a high of $732,000 based on Romine's estimate of value. The jury's award of $350,000 is certainly well within the range, is not "glaringly unwarranted," and it does not shock the conscience of the court. *Callahan*, 863 S.W.2d at 871. Since TIF fails to demonstrate that the damages are excessive, we need not address the second prong of the *Callahan* test, whether the excessive award resulted from passion or prejudice brought about by trial error or misconduct by the prevailing party. Point denied.

▬▬▬ In its third point, TIF alleges the trial court erred in allowing Shaner to testify to the value of the property located at 820 Washington Street. The property was one of five comparable sales that Shaner relied on to reach his appraisal value. According to TIF, Shaner determined the purchase price of 820 Washington without a sufficient factual basis. Shaner learned in a conversation with the broker who handled the sale of 820 Washington that there was an ancillary agreement concerning the sale. According to Shaner's testimony, the seller retained the right to parking spaces on the property in exchange for the buyer's rights to parking spaces at another location. Shaner testified that the ancillary agreement had no impact on the sale price. The only adjustment Shaner made with respect to the price of 820 Washington was a five percent upward adjustment to account for time elapsed from the date of sale. TIF claims that by offering his opinion that the ancillary agreement had no impact on the price, Shaner improperly offered his opinion as to the price of 820 Washington.

TIF made no objection whatsoever to the testimony about which it now complains. Moreover, it made no mention of the issue in its Motion for New Trial or the extensive suggestions in support thereof.

> To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial. If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned. Similarly, failure to make a timely request for further relief when an objection has been sustained may be deemed a waiver of further remedial relief.

*Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 168 (Mo.App. W.D.1997). (Citations omitted). Since TIF failed to object to the testimony, any error regarding its admission was not preserved for review. Moreover, TIF does not request plain error review pursuant to Rule 84.13(c) but rather, argues as if the matter had been preserved. Nevertheless, we have reviewed the issue sufficiently to determine that there was no error in the admission of the testimony and consequently there is no basis for plain error review. Point three is denied.

▬▬▬ TIF's fourth claim on appeal is that the trial court erred in admitting Shaner's testimony as expert opinion, because it was not based upon the type of facts reasonably relied upon by experts in his field to formulate their opinions. Specifically, TIF claims that Shaner failed to follow industry standards in evaluating the change in market conditions by failing to use the same property in his paired sales analysis.

▬▬▬ One of the accepted methods of appraising condemned property is the comparable sales approach. *State ex rel. MHTC v. Roberts*, 926 S.W.2d 18, 21 (Mo.App. W.D. 1996). The comparable sales approach compares the condemned property to voluntary sales of similar properties in the area. *Id.* Shaner compared two adjacent properties, right behind Romine's land, that were sold in 1992 and 1996, respectively, to determine appreciation of the properties.

TIF's only objection to Shaner's paired sales analysis came in its sixth motion in limine, which was denied by the court. The motion in limine asked that Romine be precluded from presenting evidence of "Mr. Shaner's 'paired sales analysis,' based on the reasons stated in the Suggestions in Support" of the motion. The Suggestions argued that Shaner's approach be rejected because it involved use of different properties, claiming such procedure to be too specula-

tive. When Romine began to question Shaner about the paired sales analysis at trial, TIF's counsel made a continuing objection "based on my motion in limine." This was the only objection made.

Although there is a dearth of case law on the subject, one Missouri case offers some guidance. In *Elam v. Alcolac, Inc.*, 765 S.W.2d 42 (Mo.App. W.D.1988), this court recognized and approved the concept of paired sales analysis and value trends of comparable real property. *Elam* describes the paired sales technique as "the data derived from comparable properties sold twice within the period of research." *Id.* at 218. Using this information, and the "data ... from the other, single, comparable sales," *id.*, the appraiser in *Elam* was able to establish value trends of comparable real property. This court approved such methodology by holding that the trial court did not err in admitting the evidence. *Id.* at 219. In doing so, we recognized that the matter of admission of value opinion based upon comparable sales is one of trial court discretion. *Id.* We further declared that " '[t]he weight to be given such evidence is for the jury. The trial judge's determination as to admissibility or nonadmissibility of such evidence will not be upset on appeal unless it is a clear abuse of discretion.' " *Id.*, *quoting State Highway Comm'n v. Wertz*, 478 S.W.2d 670, 675 (Mo. 1972).

In this case, Shaner used the methodology in question to arrive at a value trend, just as was done in *Elam*. From the data, he calculated a monthly appreciation rate of 1.35%.[2] There was no "clear abuse of [the trial court's] discretion." *Id.* TIF also argues that Shaner used inappropriate calculations to arrive at his appreciation rate. According to TIF, Shaner ignored the impact of compounding growth which resulted in an artificially high growth rate. TIF fails to prove this assertion with any supporting evidence.

Without such proof, we have no grounds to find that Shaner's testimony was inadmissible.[3]

As its fifth ground for appeal, TIF asserts that the discussion of the role of private business in the redevelopment plan, in voir dire, prejudiced the jury against TIF. TIF objected to Romine's counsel discussing the private nature and scope of the project, as well as the comparative wealth of the developer, DST, to Romine. TIF believes these issues were irrelevant and inflammatory and raised with the sole purpose of prejudicing the jury against TIF.

TIF's complaint really comes down to two questions asked during voir dire. The first question was:

Is there any member of the panel that believes it's wrong for the government to condemn and take land from private citizens so that it can be used by private developers?

TIF objected on the basis that it was a question about private use rather fair market value. The court allowed the question but stated that no further questions should be asked on the subject. TIF now complains because Romine's counsel subsequently made this inquiry:

Let me ask this question. If a landowner had vacant land that he'd been holding for several years and the government came in and took that property so that they could put up a private office development, not funded by the City but by private developers, would that impact your decision?

TIF did not object to the latter query and therefore any error relating to the question has not been preserved for review. *Letz*, 975 S.W.2d at 168. As to the first question, we find no abuse of discretion.

**2.** We note that one of TIF's experts used paired analysis of other comparable properties to arrive at a 1% monthly appreciation, which is generally consistent with Shaner's testimony.

**3.** Throughout this point, TIF has attempted to rely on books and articles, such as *Appraisal of Real Estate, Tenth Edition*, that are not in the record to support its arguments. Neither the arguments based on those works, nor the authorities themselves, were made or presented to the trial court. While we have discretion to refer to authoritative works outside the record, under the circumstances of this case, we are unwilling to convict the trial court of abuse of discretion based on information and arguments not presented at the trial court level.

The "[c]ontrol of voir dire is within the discretion of the trial court [and] only an abuse of discretion and likely injury justify reversal." *State v. Parker*, 886 S.W.2d 908, 920–21 (Mo. banc 1994), *citing State v. Bannister*, 680 S.W.2d 141, 145 (Mo. banc 1984). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 881 (Mo. banc 1993). Point V is denied.

In its sixth and final point on appeal, TIF argues that the trial court should have excluded testimony about Romine's frustrated intent to rebuild a house on the property as irrelevant and prejudicial against TIF. Romine maintained a house on his property until 1992, when it was destroyed by fire. Romine testified that he left the land vacant because he was caring for a sick relative and he assumed that the city was going to seize his property, regardless of whether he built a home. TIF asserts that Romine's reasons for not rebuilding his house are irrelevant to the case, and were included for the sole purpose to inflame the jury.

Once again, TIF did not object to the testimony and any error in its admission is not preserved for review. *Letz*, 975 S.W.2d at 168. Moreover, the admission of evidence in a condemnation proceeding is within the discretion of the trial court judge. *State v. Our Savior Lutheran Church*, 922 S.W.2d 816, 819 (Mo.App. E.D.1996). Only when there is an error, resulting in substantial and glaring injustice, will we reverse a trial court's decision regarding the admission of evidence. *Id.* We find no instances of substantial and glaring injustice in this case. Point denied.

The judgment is affirmed.

All concur.