James **GREEN**, Appellant,

v.

**COMMERCE BANK OF ST. LOUIS, N.A., and Heartland Automotive Services, Inc., Respondent.**

**No. ED 78200.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 29, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 16, 2001.

Application for Transfer Denied
Sept. 25, 2001.

**230**

David L. Antognoli, Granite City, IL, for Appellant.

Michael D. Hart, Daniel D. Doyle, St. Louis, MO, for Respondent.

DRAPER, Judge.

James C. Green (hereinafter, "Green") brought this suit to quiet title to real estate and recover damages from Commerce Bank of St. Louis (hereinafter, "Commerce") and Heartland Automotive, Inc.. The trial court entered summary judgment. Green appeals.

In review of summary judgment, we review the record in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is intended to move the parties beyond the petition's allegations and determine if a material fact for trial exists. *Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993). Appellate review of the grant of summary judgment is purely a question of law and, hence, employs the same criteria as imposed by the trial court in its initial determination of the propriety of the motion. *ITT Commercial Finance*, 854 S.W.2d at 376.

When viewing the facts in the light most favorable to the party against whom the summary judgment was entered, we find that the facts are as follows: At issue in this case is a parcel of land (hereinafter, "the Property") located in Saint Louis County. The Property was acquired by the Illinois corporation Midwest Superior Car Wash, Inc. (hereinafter, "Midwest Superior"). On January 11, 1988, Midwest Superior executed a promissory note in favor of United Illinois Bank of Collinsville (hereinafter, "UIB") in the amount of $355,000 secured by the deed of trust on the Property. UIB filed the deed of trust to the Property on January 12, 1988.

Initially, Midwest Superior erected a car wash facility on a portion of the Property. Subsequently, Midwest Superior decided to erect an oil change facility on the Property. The portion of the Property

where the car wash facility is located will be referred to as the "Car Wash Property," and the portion of the Property with the oil change facility will be referred to as the "Jiffy Lube Property" for clarity even though the Property is not legally subdivided.[1] In order to finance the oil change facility, Midwest Superior borrowed money for the construction from Commerce on August 23, 1988. Commerce obtained a deed of trust[2] for the Property and executed a building loan agreement with Midwest Superior. Commerce filed its deed of trust with the Saint Louis Recorder of Deeds on September 2, 1988. At the same time Commerce acquired the second mortgage, UIB executed a "Partial Release of Mortgage Deed" (hereinafter, "partial release") conveying any interest it held in the Jiffy Lube Property to Midwest Superior and reserving all interest in the remainder of the Property. The partial release was recorded immediately, and Commerce requested notification of any foreclosure on the first mortgage.

Midwest Superior granted Commerce an Assignment of Leases on August 31, 1988, and recorded the assignment on September 2, 1988. Midwest Superior was entitled thereby to collect and retain the property rents provided it remained current on the mortgage to Commerce. However, on October 26, 1990, Midwest Superior directed its tenant to pay its rental fees directly to Commerce.

As additional consideration for its loan, UIB received a pledge of a limited partnership interest in Granite Investment Company. Green is a general partner in Granite Investment Company. Midwest Superior defaulted. When UIB began to make overtures that it would foreclose on the note, Green bought the Midwest Superior note in 1991 or 1992 so as not to have UIB as a partner in his company.

Green filed an Appointment of Successor Trustee on October 4, 1993, naming Daniel W. Brown (hereinafter, "Brown") as the successor trustee under the first mortgage.[3] Brown conducted a title search which revealed the second mortgage and Commerce's request of foreclosure sale notification. Yet, this title search failed to reveal evidence of the partial release. Brown contacted an in-house attorney for Commerce before proceeding with the foreclosure sale on November 17, 1993. Yet, Commerce claims it never received notification of the foreclosure sale for the Jiffy Lube Property.

Brown conducted a foreclosure sale to collect on the UIB Deed of Trust, which he incorrectly believed covered the entire property, on November 17, 1993. At that sale, Green was the successful bidder. Green used the money from the sale to setoff the amount due on the note. Brown issued Green a trustee's deed foreclosing the property of "Midwest Superior Car Wash" on November 19, 1993. The trustee's deed was filed on March 6, 1998.

Green paid all real estate taxes levied against the Property which were delinquent after the foreclosure sale.[4] The Jiffy Lube Property rental agreement pro-

---

1. Only title to the Jiffy Lube Property is in question; title to Car Wash Property is not in dispute.

2. This deed of trust also could be referred to as a second mortgage given the initial deed of trust to UIB.

3. The appointment of successor trustee is for the "Deed of Trust executed by Superior Car Wash, Inc.." There is nothing of record to show an appointment of a successor trustee for "Midwest Superior Car Wash, Inc.."

4. Real estate taxes, penalties, and interest totaled $111,964 at the time of filing the instant action.

vides that the tenant is to pay the real estate taxes in the form of "additional rent." Both the current and former tenant paid this additional rent[5] to Commerce who retained the proceeds.

Green and Commerce entered into negotiation in an attempt to settle the disputed real estate taxes. However, both parties dispute the conclusion of their settlement discussions. This appeal follows.

■ Green raises four points on appeal.[6] In his first point, Green claims that the trial court erred in granting summary judgment on the quiet title claim because a genuine issue of material fact exists as to whether Green had actual or constructive notice of Commerce's priority claim. We disagree.

On the day Commerce acquired its second mortgage, UIB executed and recorded the partial release. Missouri law provides in Section 442.390 RSMo (2000) that:

> Every such instrument in writing, certified and recorded...shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice.

The partial release was recorded on September 2, 1988. A title search on the Property prior to the foreclosure sale was performed in December 1992. The statute clearly provides that subsequent purchasers of real estate are deemed to have notice when a document is recorded. *Id.,* *see also Metmor Financial, Inc. v. Landoll Corp.,* 976 S.W.2d 454, 462 (Mo.App. W.D.1998)(charging lien holder with constructive notice of recorded judgment despite failure to discover judgment in title search); *H.B.I. Const., Inc. v. Graviett,* 903 S.W.2d 653, 655 (Mo.App. E.D.1995)(finding buyer of real estate had constructive notice of recorded indenture). Regardless of whether Green had actual notice of the partial release, Green had constructive notice as it was recorded properly with the recorder of deeds. Point denied.

For clarity, we address Green's third point before his second. In his third point, Green alleges the trial court erroneously granted summary judgment on the quiet title claim in that the alleged error in appointment of the successor trustee did not invalidate the foreclosure sale. Green argues that the trial court judgment states the appointment of the successor trustee invalidated the entire foreclosure sale. We disagree.

■ Green properly named Brown as the successor trustee under the first mortgage. As the successor trustee, Brown had the power to foreclose on that mortgage. However, Brown did not have the right to foreclose on the Jiffy Lube Property when that property was not encumbered by the first mortgage. Brown can only convey the title he held at the time of the foreclosure sale. *Webster Oil Co., Inc. v. McLean Hotels, Inc.,* 878 S.W.2d 892, 894 (Mo.App. S.D.1994), *AgriBank FCB v. Cross Timbers Ranch, Inc.,* 919 S.W.2d 256, 261 (Mo.App. S.D.1996). Thus, the foreclosure sale only conveyed the Car Wash Property to Green. Point denied.

■ In point two, Green claims that whether Commerce should be estopped

---

**5.** The additional rent was in excess of $30,000.

**6.** We note that Appellant complied with Rule 84.04(d). However, we remind Respondents to follow the same guidelines of Rule 84.04(d) and the dictates of *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978).

from claiming priority as a result of its acquiescence in the foreclosure sale is a genuine issue of material fact which defeats the grant of summary judgment on the quiet title claim. Commerce was under no duty to assert itself at the foreclosure sale as Brown did not have the right to convey the Jiffy Lube Property. It is axiomatic that if a trustee does not have the right to convey title to another's property, it is not necessary for that other party to appear at a foreclosure sale. Point denied.

Finally, Green filed his response to Commerce's summary judgment motion and an alternative motion for partial summary judgment on his claim of unjust enrichment. In the alternative to receiving title to the Jiffy Lube Property, Green sought reimbursement from Commerce for the amount of real estate taxes attributable to that property and paid by Green. The trial court found, based upon equitable principles, that Commerce retained $12,000 in escrow for real estate taxes on the Jiffy Lube Property which should be paid to Green. Green claims the trial court erred in denying and limiting his damages for unjust enrichment because the amount which should be paid to Green and whether recovery should be allowed against the tenant in addition to Commerce was a genuine issue of material fact.

■ Commerce does not own the Jiffy Lube Property; it retains a deed of trust to the property. If the real estate taxes were not paid, the property could be sold for back taxes and Commerce's deed of trust could be satisfied from that sale. Further, if anyone were enriched by Green's payment of real estate taxes, it would be the fee property owner, Midwest Superior. Commerce did not appeal the trial court's award to Green, nor does Green present a genuine issue of material

fact which would warrant reversal of the trial court. Point denied.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, SR., P.J., and LAWRENCE G. CRAHAN, J., concur.