**Enoch Derwent BLACK, Jr. and Lois Jean Black, Plaintiffs–Appellants,**

v.

**Matthew ADRIAN, Substitute Trustee, Richard Draeger and Janet Draeger, Defendants–Respondents.**

No. 24238.

Missouri Court of Appeals, Southern District, Division Two.

July 31, 2002.

James W. LeCompte II, Cassville, for Appellants.

Matthew G. Adrian, of Warten, Fisher, Lee & Brown, L.L.C., Joplin, for Respondents.

JAMES K. PREWITT, Presiding Judge.

Enoch Derwent Black, Jr. and Lois Jean Black ("the Blacks") appeal from a judgment following non-jury trial in favor of Matthew Adrian ("Adrian"), as substitute trustee, and Richard and Janet Draeger ("the Draegers" or "Respondents" when referring to Adrian and the Draegers together) denying all counts in the Blacks' petition for permanent injunction and for declaratory judgment. With three points relied on, the Blacks claim that the trial court erred in failing to impose sanctions against Respondents for failure to produce certain documents through discovery, in entering judgment against the Blacks because they had received a deed of release that precluded Respondents' foreclosure

on the deed of trust, and in finding that the Blacks had not fully complied with terms of the deed of trust.

In our review, we will sustain the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Anderson v. Mantel,* 49 S.W.3d 760, 763 (Mo.App.2001). We view the evidence and all permissible inferences in the light most favorable to the judgment, disregarding all contrary evidence. *Id.* Due deference is afforded the trial court with respect to the credibility of witnesses and the weight given their testimony. *Id.* If the trial court did not make specific findings of fact on an issue, we consider that such findings were made in accordance with the result reached. *Goetz v. Selsor,* 628 S.W.2d 404, 405 (Mo.App.1982).

The facts viewed from the foregoing perspective show that a deed of trust was placed on property owned by the Blacks in favor of First Security Savings Association. The deed of trust was recorded in Barry County, Missouri on June 15, 1976, and subsequently assigned to Home Savings Association of Kansas City, F.A. (HSA). HSA was later placed into receivership by Resolution Trust Corporation (RTC), which was succeeded by Federal Deposit Insurance Corporation (FDIC). The exact dates of the noted assignment, receivership, and succession are not part of the record.

Between 1976 and 1991, the Blacks made monthly payments on the promissory note. In 1991, the residence on the property was rendered uninhabitable by a fire. According to the Blacks, they were advised by the holder of the note to stop making payments after the fire because the note would be credited with the insurance settlement that would be paid to the holder as loss payee.

In 1994, the Draegers, who owned property adjacent to the subject property, approached the Blacks to ask if they had interest in selling the property. Mr. Draeger testified that Mr. Black informed him that he was not willing to sell at that time, because they were waiting for the insurance company to settle.

After approaching the Blacks about selling, Mr. Draeger began to "investigate further as to the owner of the property." Through his research, Draeger determined that Dick Martin & Associates, also referred to as Metmor Finance Corporation (MFC), held the promissory note and deed of trust. At the hearing the Draegers introduced into evidence a document purporting to transfer the note and deed of trust from RTC to MFC, which was recorded in Barry County on September 28, 1992. The Draegers also introduced a document that gave MFC a limited power of attorney to act on behalf of Federal Home Mortgage Corporation.

The Draegers worked with Dick Martin, as a representative of MFC, in acquiring the note and deed of trust. A document dated June 6, 1996, also recorded in Barry County, purports to transfer the note and deed of trust to the Draegers. It was signed by Delayne Mahloch, on behalf of Mellon Mortgage Corporation (MMC). The Draegers purchased the note by paying the face value of it ($3,000) to MFC. The promissory note introduced by the Draegers into evidence indicated a chain of title under which they were the ultimate transferees, with MFC as the transferor.[1]

1. Without the benefit of Respondents' exhibits on appeal, the connection between MFC and MMC is unclear. Also, we are unable to determine if MMC held the note or from whom MMC acquired it. During the direct examination of Mr. Draeger, he testified that

The deed of trust contains a power of sale clause. In a document dated September 18, 1996, the Draegers appointed Adrian as successor trustee, in order to effectuate a foreclosure sale of the property. That document, along with the document indicating the purported transfer from MFC to the Draegers, were sent, according the Respondents, to the Blacks at their last known address.

Prior to the foreclosure sale that prompted the Blacks' petition for permanent injunction considered here, Respondents initiated four other foreclosure attempts. Two of those prior attempts were stayed because of bankruptcy petitions filed on behalf of Mrs. Black, which were voluntarily dismissed. The two other prior attempts at foreclosure sales were enjoined by temporary retraining orders (TROs). Although both of those TROs were dissolved and no preliminary injunction issued on either one, republication of the foreclosure notice was required due to the passage of time.

The foreclosure documentation, including notices of foreclosure, were sent to the Blacks at their last known address and published in the newspaper. Adrian also sent the Blacks a notice of default and acceleration. Mr. Black testified that he and his wife received notification from Adrian that the Draegers had purchased the note, which indicated that the Draegers were "going to ask that [the Blacks] pay the balance ... due." Adrian provided the Blacks with an accounting of the balance due as of February 19, 1999, which included $15,776.88 total balance on the note plus $3,207.91 in foreclosure costs.

On July 13, 1999, FDIC executed an affidavit of cestui que trust, indicating that the note described in the deed of trust originally issued to the Blacks had been paid in full, but could not be produced because the note was lost or destroyed and was "not in the possession of any person having a lawful claim to the [n]ote." On July 28, 1999, the Blacks signed an affidavit of lost note, claiming that the promissory note could not be produced because it had been lost or destroyed and was "not now in the possession of any person having any lawful claim to same and same [had] been paid and satisfied." A satisfaction of deed of trust, executed by FDIC, was recorded in Barry County on July 29, 1999.

In August of 1999, Respondents attempted the fifth foreclosure sale. On August 26, 1999, the Barry County Circuit Court granted a TRO in favor of the Blacks. The Blacks filed their petition for permanent injunction and for declaratory judgment on December 22, 1999. The hearing was held October 12, 2000.

At the hearing, the Blacks objected to the introduction into evidence of several of Respondents' exhibits that the Blacks claimed Respondents had failed to produce in response to discovery requests. The exhibits at issue were the June 1996 document purporting to transfer the note and deed of trust to the Draegers; the September 1992 document purporting to assign the deed of trust from RTC to MFC; the promissory note and deed of trust that, according to Mr. Draeger's testimony, indicated a chain of title leading to the Draegers; and the limited power of attorney appointing MFC. The trial judge overruled the Blacks' objections, primarily because each of the documents was available to the Blacks as a public record, and thus, the trial judge determined they were not

---

the back of the note indicated a chain of title because it included stamps specifying the

transfers from one entity to another.

prejudiced by Respondents' failure to produce in response to the discovery request.

A docket entry dated January 31, 2001, indicates that the trial judge "ORDERED that Judgment be entered for [Respondents] upon each count of [the Blacks'] petition that [the Blacks] take nothing by this action." The Blacks' motion for new trial or motion to reopen was denied on April 4, 2001. This appeal followed.

Within their first point on appeal, the Blacks claim that the trial court erred in failing to impose sanctions upon Respondents due to their alleged willful failure to produce documents in response to the Blacks' discovery request. The Blacks' discovery request asked Respondents to produce all documents related to the assignment of the note and deed of trust, or the chain of title, that led to the Draegers. At trial, the Blacks objected to introduction into evidence by Respondents of certain documents that signified the chain of title, but allegedly had not been provided to the Blacks prior to the hearing, specifically the June 1996 document purporting to transfer the note and deed of trust to the Draegers; the September 1992 document purporting to assign the deed of trust from RTC to MFC; the promissory note and deed of trust that, according to Mr. Draeger's testimony, indicated a chain of title leading to the Draegers; and the limited power of attorney appointing MFC. As noted above, the trial judge overruled the Blacks' objections, noting that all had been recorded in Barry County, and were therefore available to the Blacks as public records.

■ A trial court has broad discretion when evidence is challenged as not being disclosed in response to a discovery request. *Tax Increment Fin. Comm'n of Kansas City v. Romine*, 987 S.W.2d 484, 487 (Mo.App.1999). It is within the trial court's discretion to admit or reject such

evidence, or to impose appropriate sanctions. *Id.* In our review, we presume that a ruling that lies within the trial court's discretion is correct. *Id.* The Blacks bear the burden of proving that the trial court abused its discretion by admitting the evidence. *Id.* In addition, the Blacks must show that they were prejudiced by any abuse of discretion by the trial court. *Id.*

Respondents bring to our attention a case that states that it would not be Respondents' duty to provide the Blacks with records that were solely in the possession of a third party, particularly where those records are equally accessible to them from that third party. *Brotherton v. Burlington Northern R.R.*, 672 S.W.2d 133, 136 (Mo.App.1984). In this case, it may not be totally accurate to say that the recorded documents were "solely" in the possession of a third party, the recorder's office in Barry County. However, since the documents were recorded, they were equally available to the Blacks as well as to Respondents.

■ This court has previously stated the doctrine that the recording of instruments that are authorized to be recorded provides constructive notice to the world of those documents and their contents. *Statler Mfg., Inc. v. Brown*, 691 S.W.2d 445, 450 (Mo.App.1985). As we discussed in *Statler*, the above statement expresses the doctrine too broadly, and it is more appropriate to say that the recording of a document provides constructive notice *"to those who are bound to search for it."* *Id.*

Under § 442.390, RSMo Supp.1999, "[e]very such instrument in writing, certified and recorded in the manner herein prescribed, shall, from the time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and

mortgagees shall be deemed ... to purchase with notice." Cases have interpreted the statute to impart constructive notice onto subsequent purchasers, thereby placing a burden on them to search the record. *See Green v. Commerce Bank of St. Louis, N.A.,* 53 S.W.3d 229, 231 (Mo.App.2001). Thus, there is no question that the Draegers had constructive notice and were bound to search the record.

Although the Blacks may not have been bound to search the record for the chain of title, given the circumstances of this case, they were not prejudiced by Respondents' failure to produce the noted documents. They were all recorded in Barry County, and the Blacks had initiated four previous actions to stop attempted foreclosure sales by Respondents. At the hearing, during the discussion of the Blacks' objection to the introduction of these documents into evidence, Adrian (speaking in his capacity as the Draegers' counsel) noted that the documents were presented at previous hearings to both the court and the Blacks. Adrian also indicated, however, that no record was made of those hearings and that they were heard before different judges.

The trial judge concluded that, given how critical these documents were to the current action, as well as to the previous actions; the Blacks' interest in the matter; and the availability of these recorded documents to all parties from the recorder's office in Barry County, the Blacks were not prejudiced by the trial court admitting these documents into evidence. We agree. The trial judge apparently believed that in this, and the previous actions, the Blacks would have learned of the documents, particularly in view of the fact that they were recorded, and as no reason has been shown as to what, if any, difference advance notice to the Blacks would have made, we find no prejudicial error. Point I is denied.

In their second point, the Blacks claim that the trial court erred in entering judgment against them on their petition because they had received a satisfaction of the deed of trust from the lawful holder; therefore, Respondents were not holders in due course and not entitled to proceed with the foreclosure. The Blacks argue their receipt of a deed of release or satisfaction of the deed of trust provided a defense that would preclude the Draegers from becoming holders in due course of the note and deed of trust.[2]

Under the circumstances of this case, the Blacks' reliance on the holder in due course doctrine is misplaced in two respects. First, assuming the holder in due course doctrine was applicable, the satisfaction of the deed of trust did not occur until 1999, three years after the document was recorded that purported to transfer the deed of trust to the Draegers. Second, the note and deed of trust were transferred and assigned numerous times until the chain of title reached the Draegers as ultimate transferees. A holder in due course may enforce payment of a note, but a holder may as well. *White v. Mid-Continent Investments, Inc.,* 789 S.W.2d 34, 39 (Mo.App.1990). In addition, an assignee of a deed of trust or a promissory note "is vested with all interests, rights

---

**2.** Under § 400.3–302, RSMo Supp.1999, a holder is a holder in due course if the instrument was taken "(i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 400.3–306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 400.3–305(a)."

and powers possessed by the assignor in the mortgaged property." *Id.*

Therefore, there is no merit to the Blacks' argument that the trial court's judgment that the Blacks were not entitled to a permanent injunction was in error based on the satisfaction of the deed of trust provided by FDIC to the Blacks. Point II is denied.

The Blacks' third point is that the trial court erred in its finding that they had not fully complied with the deed of trust and that the deed of trust was not satisfied by them maintaining insurance coverage for the holder of the deed of trust. The Blacks also claim that the trial court erred by not finding that the Respondents were obligated to pursue recovery through insurance coverage required by the deed of trust before seeking foreclosure of the note.

The Blacks argue that a 1962 case would release them from any further obligation on the debt because they maintained insurance coverage as required under the deed of trust. *See Northwestern Nat. Ins. Co. v. Mildenberger,* 359 S.W.2d 380 (Mo.App.1962). However, we find no such holding or language in the case. Respondents are correct that in *Northwestern,* the mortgagee pursued the remedy of foreclosure rather than making a claim under an insurance policy after a fire. *Id.* at 384. The court held in *Northwestern* that the purchase at a foreclosure sale for the full balance due on a note ended the creditor-debtor relationship of the mortgagee and mortgagor, and thereby terminated a claim upon the proceeds of insurance money that inured to the benefit of the mortgagee after the fire. *Id.* at 386. We also agree with Respondents that there are no cases under which Respondents would be compelled to pursue a remedy under an insurance policy rather than

under the power of sale clause of the deed of trust.

As for whether or not the Blacks had fully complied with the terms of the deed of trust, there were no specific findings on that issue. Fact issues without specific findings are considered as having been found in accordance with the result the trial court reached. *Hall v. Hall,* 53 S.W.3d 214, 218 (Mo.App.2001). Point III is denied.

The judgment is affirmed.

PARRISH and SHRUM, JJ., concur.