Skip YORK, et al., Plaintiffs–
Respondents,

v.

AUTHORIZED INVESTORS GROUP,
INC., a Missouri Corporation,
Defendant–Appellant.

No. 67452.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 3, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 17, 1996.

Application to Transfer Denied
Nov. 19, 1996.

Eckelkamp, Eckelkamp, Wood and Kuenzel, Steven P. Kuenzel, Washington, for Defendant–Appellant.

Law Offices of Stanley D. Williams, Stanley D. Williams, St. Clair, P. Daniel Billington, Union, for Plaintiffs–Respondents.

HOFF, Judge.

In this cause, plaintiffs, Trustees of Lake St. Clair Subdivision, sued defendant, Authorized Investors Group, Inc. to collect unpaid lot assessments on property owned by defendant at Lake St. Clair. In response to plaintiffs' petition for unpaid assessments, defendant filed a counterclaim alleging plaintiffs had trespassed and removed dirt from 4.11 acres which defendant claimed it owned. By agreement, the parties first litigated the disputed ownership of the 4.11 acres and the trial court found plaintiffs were the owners of the 4.11 acres. The trial court then tried the issue of defendant's unpaid assessments. It found defendant was liable for the assessments asserted by plaintiffs, and entered judgment against defendant in the amount of $29,093.33. Defendant appeals from the trial court's two orders. We affirm.

For purposes of appeal, the facts are as follows. Defendant is the developer of Lake St. Clair subdivision in Franklin County,

Missouri. The subdivision consists of the "big" lake, three smaller lakes, and over 1,300 residential lots. In 1966, defendant began developing the subdivision and selling lots. Each lot in the subdivision is subject to an indenture which was filed and recorded with the subdivision plats. As developer, defendant was the grantor of this indenture. Under the terms of the indenture, the trustees were given title to "drives, parkways, easements, or any land within subdivision not designated as lots." Paragraph 3 of the indenture allows the trustees to levy assessments against the lots in the subdivision.[1] The assessments are to defray the costs of executing the indenture.

In early 1989, plaintiffs filed suit against defendant for unpaid assessments for the years 1983 through 1988. At trial, plaintiffs' petition was amended to include unpaid assessments through 1994. In response to plaintiffs' petition for unpaid assessments, defendant filed a counterclaim alleging plaintiffs had trespassed and removed dirt from 4.11 acres which defendant claimed it owned. Defendant's counterclaim sought damages against plaintiffs of $722,720. Defendant's answer to plaintiffs' petition for unpaid assessments was a general denial. Plaintiffs' Reply to defendant's counterclaim denied defendant owned the 4.11 acres and raised estoppel and laches as affirmative defenses. By agreement, the parties first litigated the disputed ownership of the 4.11 acres.

Defendant was the original developer, developing the subdivision in phases from the first Restrictions and Plat filed in 1966 through the eighth Restrictions and Plat filed in 1969. All eight recorded Restrictions contained the identical twenty restrictions, but differed in the legal description covered. The eight Restrictions and Plats together formed the Lake St. Clair development.

The 4.11 acres was contained in the legal descriptions of the pertinent recorded Restrictions, but was not contained in the legal description of any recorded plat. The "big" lake, immediately adjacent to the 4.11 acres, was also contained within the legal description of the pertinent Restrictions, but was not within the legal description of the plats. Boundaries of the "big" lake and the adjoining 4.11 acres were both illustrated in outlines contained in the recorded plat drawings. Two platted subdivision roads led into the 4.11 acres.

Defendant's expert witness, Mr. Charles Hansen, has conducted title work since the 1940's. Mr. Hansen testified that defendant was the last record owner of the 4.11 acres. Mr. Hansen testified the 4.11 acres cannot be found within the legal description of any of the recorded plats. It is contained within the legal description of the pertinent Restrictions. Mr. Hansen further testified defendant was the last record owner of the "big" lake, but that may not now be the case because of "what has happened over these many years."

Plaintiffs' expert, Mr. Lloyd Wurdack, has performed title work since 1946. Mr. Wurdack testified the 4.11 acres was owned by plaintiffs. He agreed the 4.11 acres was not

---

1. Paragraph 3 of the indenture reads as follows: For the purpose of defraying the costs and expenses which may be incurred in the execution of the Trust by Trustees, they may levy assessments against the respective lots contained in said subdivision in such amount as they may deem necessary, but to be based upon a uniform rate per front foot, provided, however, that such assessments may be levied not more than once during each calendar year and no such assessment shall exceed $0.65 per front door without the consent of owners of a majority of the lots contained in the subdivision. Front shall be considered the side toward the lake for assessment purposes. All such assessments shall become a first lien on the land assessed from date of recorded assessment filed in the Recorder's Office of Franklin County, unless lien is subordinated by Trustee, in writing, to other liens, or unless the assessments are paid. Assessments shall be payable sixty days after the date levied and shall thereafter bear interest at a rate of six per cent (6%) per annum until paid, and the collection thereof may be enforced by suits at law instituted by the Trustees against any property owner of a lot on which lien shall remain undischarged and successors in interest to such lot. Assessment funds may be used for maintenance, management salary or capital improvements.

contained within the plats' legal description, but was contained within the lines of the recorded plats. Mr. Wurdack testified the 4.11 acres is also contained within the legal description of the pertinent recorded Restrictions. Similarly, the "big" lake was not within the legal description of the Restrictions. The outline of the "big" lake is contained on various plats.

Defendant paid no real estate taxes on the 4.11 acres. Defendant paid real estate taxes on other property it owned at Lake St. Clair. The Franklin County Assessor did not assess taxes on the 4.11 acres. The Assessor considered it a park area; lakes and parks are not assessed.

Plaintiffs never assessed defendant for lot assessments against the 4.11 acres. Plaintiffs paid all maintenance expenses on the "big" lake and 4.11 acres, including the expense incurred to raise the lake's dam. When the dam was raised, dirt was removed from the 4.11 acres and defendant objected to plaintiffs' removal of the dirt. Defendant has paid no maintenance expense for the "big" lake.

A former trustee, James Garrison, testified plaintiffs had cut the grass on the 4.11 acres semi-annually and the area was cleared off when the dam was raised. Other than objecting to the dirt removal, defendant never communicated with plaintiffs regarding the 4.11 acres.

The trial court's order cited part of the Preamble and Paragraphs 14 and 20 of the Restrictions as being the pertinent provisions to resolve the issue before the trial court. Those provisions are as follows:

NOW THEREFORE, in consideration of the premises, and of the reliance upon the terms of this instrument by parties hereto and their successors in interest, AUTHORIZED INVESTORS GROUP, INC., does herewith grant, bargain, sell, convey and confirm unto the said Trustees, their successors and assigns, the several strips and parcels of land in the said subdivision which are delineated and set apart on said plat as drives, parkway, easements, or any land within subdivision not designated as lots.

. . .

14. It is understood that a general recreation area will be established for the use of lot owners herein and their guests as designated by Grantor; that the areas not laid out in lots shall be used without restrictions or reservation by Grantor as in the judgment of it or its successor shall seem best; that nothing herein contained shall limit the right of Grantor to use the portions of the property not sold for residence purposes, for any purpose not inconsistent with the plat and plan of said subdivision; that the lake in this development shall be available to property owners without charge but subject to rules as established by Trustees, Grantor or its successor; Grantor and Trustees are herein used interchangeably.

. . .

20. It is understood that Grantors may hereafter add additional land and additional subdivisions of land now owned by Grantors to the total development known as Lake St. Clair.

The trial court found defendant entered into a plan to develop Lake St. Clair; that the "big" lake and 4.11 acres adjoining it was land within the subdivision not designated as lots and accordingly conveyed to plaintiffs by defendant. The trial court ruled this conclusion was further supported by the following evidence: (1) the last Plat was recorded in 1969 and defendant had not developed the 4.11 acres since 1966 and (2) the 4.11 acres were part of the "big" lake's spillway and had been maintained by the trustees. The trial court concluded plaintiffs were the owners of the 4.11 acres. The trial court further determined, although not necessary for its decision, that all the elements of equitable estoppel were present. This court dismissed a premature appeal of the trial court's order.

The trial court later tried the issue of defendant's unpaid assessments. At the sec-

ond trial, plaintiffs' secretary, Nancy Braun, explained the assessment bill process. Every year, the trustees adopted a Resolution establishing the assessment rate for subdivision lots at Lake St. Clair. She recorded the adopted Resolutions with the local Recorder of Deeds. These annual Resolutions indicated plaintiffs were duly appointed as trustees, but did not indicate when they were appointed. Trustee vacancies, pursuant to the Restrictions, were filled by appointment of the remaining trustees. That process was done consistently, according to Lake St. Clair records, since defendant's officers stepped down as the original trustees.

Mrs. Braun further testified that, after the trustees adopted a Resolution each year, she mailed out annual bills for the lot assessments. Mrs. Braun sent bills each year to defendant. Defendant's bills reflected current billings, and included past due billings for prior years. When assessment bills remained unpaid, Mrs. Braun filed liens on the subject lots with the Franklin County Recorder of Deeds. Liens were filed against defendant's lots for its unpaid assessments. Some of defendant's lots were sold at tax sales in 1993 and 1994, but no tax deeds had been executed as of the trial date in November, 1994. Mrs. Braun indicated defendant's unpaid lot assessments totaled $29,567.58, which included $9,051.15 on lots sold at tax sales.

Defendant paid $3,529.50 for all assessments it owed in 1982. Defendant also paid assessments, other than for lots in the current suit, whenever defendant sold particular lots. Defendant claimed it wrongfully paid assessments totaling $474.25.

After the second trial, the trial court found the plaintiffs duly followed the requirements of Restriction Paragraph 3 concerning assessments, and there was a balance due of $29,567.58, less a credit to defendant of $474.25. The trial court entered judgment in favor of plaintiffs in the amount of $29,093.33, representing a lien on properties owned by defendant at Lake St. Clair Subdivision. This appeal followed.

The standard of review in a court-tried action is well established. The trial court's judgment will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is "against the weight of the evidence" with caution and a firm belief the decree or judgment is wrong. *Id.*

Defendant's argument in its first two points on appeal centers on the Preamble of the Restrictions which provides, in part, that "the several strips and parcels of land in the said subdivision which are delineated and set apart on said plat as drives, parkway, easements, or any land within subdivision not designated as lots" is transferred to plaintiffs.

In point one, defendant contends the 4.11 acres were never conveyed to plaintiffs because the 4.11 acres were not included within any of the metes and bounds descriptions delineated on the eight separate plats. We acknowledge the 4.11 acres are not contained within the legal descriptions of the eight separately recorded plats. However, the "big" lake and the adjoining 4.11 acres are reflected on the plats' outline. In construing a plat, courts attempt to give effect to the maker's intention as manifested by the plat, but reservations contained in plats are construed strongly against the grantor. *Doyle v. Lowrey*, 698 S.W.2d 56, 57 (Mo.App. 1985). Moreover, courts are not limited just to words and marking on the plat, but the plat is considered in its entirety, including the outline thereof. *Id.* Point denied.

In its second point, defendant contends the 4.11 acres were not within any subdivision and, consequently, the land was not transferred to plaintiffs. Plaintiffs assert the 4.11 acres is "land within subdivision not designated as lots." Defendant argues the references to "subdivision" refer to each sep-

arately recorded plat and not to the development as a whole. The trial court found the construction and meaning of "subdivision" as used in the indentures was ambiguous. It ultimately determined defendant's assertion that the references to "subdivision" refer to each separately recorded plat would be inconsistent with the intention of defendant in creating the subdivision. We agree.

■■■ The intention of the parties is determined from the plain meaning of the language used, taken in light of the entire context of the instrument. *Newmark v. L & R Development Corp.*, 615 S.W.2d 118, 120 (Mo. App.1981). We construe restrictive covenants by considering the language used in the entire instrument, not just one clause. *Weiss v. Fayant*, 606 S.W.2d 440, 442 (Mo. App.1980).

A review of the record reveals Robert E. Faulkenberry, a witness for defendant, testified the 400 acre tract was intended to be developed to create Lake St. Clair. He further stated it was a common practice to create a development in stages to monitor sales, generate additional monies to finance the next stage, and to save money on real estate taxes on lots. Next, each indenture of restriction refers to the general recreation area to be established by defendant and that the lake in this development would be available to property owners. We note there are only three plats that have a lake contained within the boundaries of the subdivision. In order to give meaning to the provision concerning the recreational area and the lake, we agree with the trial court that "it is clear defendant was using the words subdivision and development interchangeably." The indenture of restrictions must be construed in order to sufficiently manifest the defendant's intention, that the "big" lake which is not contained within one of the described plats and the adjoining 4.11 acres is land within the subdivision not designated as lots and accordingly conveyed to plaintiffs by defendants.

We also find significant that the last plat was recorded in 1969 and there has been no development of the 4.11 acres by defendant since 1966; the location of the 4.11 acres adjacent to the lake recreational area; the use of the 4.11 acres as part of the spillway/drainage area of the lake; and the maintenance of the tract by plaintiffs.

To hold that the references to "subdivision" refer to each separately recorded plat and not to the development as a whole would defeat the plain purpose of the restrictions. The judgment is not against the weight of the evidence. Point two denied.

In point three on appeal, defendant argues the trial court erred in finding plaintiffs were the owners of the 4.11 acres via the doctrine of equitable estoppel. Because we find in points one and two that plaintiffs are the owners of the 4.11 acres, we need not address defendant's third point on appeal. Point denied.

■■■ In its fourth and final point on appeal, defendant argues the trial court erred in entering judgment in favor of plaintiffs for unpaid assessments because there was no evidence the trustees were duly elected. Consequently, defendant contends plaintiffs lacked the capacity to sue and make assessments. "The burden of proof on an affirmative defense rests with the proponent of the defense." *Stewart v. K-Mart Corp.*, 747 S.W.2d 205, 208 (Mo.App.1988).

Defendant presented no evidence to support this affirmative defense. The only evidence before the trial court, Ms. Braun's testimony regarding the process of filling vacancies on the Board of Trustees and the election of plaintiffs, established plaintiffs were duly elected pursuant to the terms of the indenture. Accordingly, the trial court's determination plaintiffs were duly elected is supported by substantial evidence.

■■■ Alternatively, defendant argues the unpaid assessments on lots that were sold at tax sales in 1993 and 1994 were erroneously included in the trial court's judgment. Defendant contends this was error for two reasons. First, the tax sale purchaser takes

title free and clear of any pre-existing liens. Because the liens were extinguished, defendant argues plaintiffs could not collect the assessments. Second, once the lots were sold at a tax sale, defendant was no longer the owner of the lot and "[n]o judgment could be entered against [defendant] for unpaid lot assessments on lots it no longer owned at the time of trial."

Of the approximate $29,000 defendant owed in unpaid assessments, about $9,000 were for lots which were sold at tax sales in 1993 and 1994. As of the trial date in 1994, no tax deeds had been executed on these lots. Until the execution of a tax deed, defendant and all other parties in interest, including plaintiffs, have the right to redeem the property by paying the delinquent taxes. *State ex rel. Wilkins v. King*, 354 Mo. 501, 189 S.W.2d 981, 982 (1945). A purchaser at a tax sale is required to provide notice to lien holders, including plaintiffs who had recorded liens for unpaid assessments. As of the time of trial, no such notice had been received and, because § 140.405 RSMo 1994 requires "at least ninety days prior to the date when [a purchaser] is authorized to acquire the deed, the purchaser shall notify any person who holds a publicly recorded ... lien or claim upon the real estate," no such notice could be received. Consequently, there was no evidence to support that the liens had been extinguished. Point denied.

The judgment of the trial court is affirmed.

PUDLOWSKI, P.J., and SIMON, J., concur.