**TRUSTEES OF GREEN TRAILS
ESTATES SUBDIVISION,
Appellant,**

v.

**George F. MARBLE, et
al., Respondents.**

**No. ED 80086.**

Missouri Court of Appeals,
Eastern District,
Division Three.

July 23, 2002.

**842**

Timothy M. Walters, St. Louis, MO, for Appellant.

Daniel C. Nelson, Jeffery T. McPherson, Cynthia A. Sciuto, Armstrong Teasdale LLP, St. Louis, MO, for Respondent.

GARY M. GAERTNER, SR., Presiding Judge.

Appellant, Trustees of Green Trails Estates Subdivision ("trustees"), appeals from the declaratory judgment of the Circuit Court of St. Louis County finding, after a bench trial, that trustees bear the responsibility for the maintenance, upkeep, repair and replacement of two railroad tie retaining walls ("tie walls") located at the rear of the subdivision lots owned by the twelve respondents, George and Nancy Marble, Howard and Arlene Bly[1], Gary and Rita Esses, Hsuchiao and Patty Yeh, Carmelo and Maria Gabriele, and Kou and Cherng Li ("homeowners"). We affirm.[2]

The tie walls at issue run roughly north and south approximately twelve feet apart, for a distance of approximately 300 feet across the rear of homeowners' property. The tie walls span lots 102, 103, 104, 105, 116, and 117 that are each owned by each of homeowners.[3] The back yards of lots 102, 103, 104, and 105 abut the backyards of lots 116 and 117.

The tie walls are tiered, consisting of an upper tie wall and lower tie wall running parallel to each other on a slope. A "bench area" of land lies between the bottom of the upper tie wall and the top of the lower tie wall. As designed, and as built, the "bench area" holds a swale for the purpose of directing and managing storm water. The swale was designed to carry storm water away from the lower tie wall and into two concrete "catchbasins" that then carries the water underground and out of the subdivision.

---

1. Howard Bly denied he was a homeowner in the subdivision and the trial court found that no evidence was adduced at trial to establish that he was or is a homeowner in the subdivision.

2. Respondents' motion to strike the legal file and exhibits filed on appeal, which was taken with the case, is hereby denied.

3. A portion of the tie walls are located in the rear of lot 115, however, the owner of lot 115 is not a party to this action.

The tie walls were built when the subdivision was built, and are approximately twenty-five years old. Due to their age, the tie walls have badly deteriorated and are in need of immediate repair. The failure of the tie walls has allowed storm water to be intercepted in the holes in the tie walls. Instead of being emptied into the swale and down into the "catchbasins," the water has flowed downhill into the backyards of the lots below the tie walls then out into the street and into the lots across the street. The storm water has flooded the streets of the subdivision on occasion.

There is a ten-foot wide easement at the rear of each of homeowners' properties. Since the rear of the four lots abut the rear of the other two lots, a twenty-foot wide easement is created.[4] The tie walls are almost entirely located within the twenty-foot wide easement. Approximately two feet of a tie wall is located outside the easement on lot 115,[5] and approximately a half-foot of a tie wall is located outside the easement on lot 116.

The recorded plats of Plat 1 and Plat 3 (the plats where homeowners lots are located) of the subdivision state the following:

All easements shown on [these] plat[s], unless designated for other specific purposes, are hereby dedicated to St. Louis County, Missouri, St. Louis County Water Company, Laclede Gas Company, Union Electric Company, Southwestern Bell Telephone Company, their successors and assigns as their interests may appear for the purpose of constructing, maintaining and repairing of public utilities and sewer or drainage facilities and to Fee Fee Trunk Sewer

Inc., its successors or assigns, for the installation, repair and replacement of sanitary sewer lines, with the right of temporary use of adjacent ground not occupied by improvements for the excavation and storage of materials during installation, repair or replacement of sanitary sewer lines.

Plat 3 also states: "[p]ermanent drainage easements and sidewalk and utility easements are hereby dedicated to St. Louis County, Missouri, for public use forever." The St. Louis County Council approved Plat 1 on September 2, 1976. The St. Louis County Council approved Plat 3 on April 21, 1977.

The Trust Agreement and Indenture of Restrictions ("trust agreement") for the subdivision states the following:

NOW THEREFORE, in consideration of the premises and the sum of One Dollar ($1.00) to them in hand paid by Trustees, the receipt of which Owner hereby acknowledges, and with the agreement and consent of Trustees to act as such hereunder, Owner hereby grants, bargains, and sells, conveys and confirms unto said Trustees ...

(A) All the strips of land shown on Plat ... for public utility easements, storm water sewers and drainage facilities.

(B) ... The rights, benefits, and advantages with said (Plat) Subdivision of having ingress and egress from and to, over, along, and across easements, storm water sewers and drainage facilities, and of appropriately beautifying, maintaining and controlling the movement of traffic over the

---

4. The only area in the subdivision where a back-to-back ten-foot wide easement exists at the rear of the lots is the area at issue in this case.

5. The owner of lot 115 is not a party to this action.

same; also of constructing, maintaining, reconstructing and repairing sewer, gas and water pipes and connections therewith on said roads, streets and driveways ...

Article II(A) of the trust agreement states the following:

The Trustees shall have, to exercise as they, in their sole discretion deem best, the power ... to construct and maintain, or permit others to construct and maintain ... storm and foul water systems, for the benefit of [homeowners]....

\* \* \* \* \* \*

*Section 2.01* Trustees shall have the right at all times to construct and maintain, or permit others to construct and maintain, in or over the easement strips delineated on plat ... storm and foul water systems for the benefit of [homeowners].

Article III of the trust agreement entitled "Rights, Authorities, Powers, Interest and Duties of Trustees" states the following:

Trustees ... shall for and during the period of the trust and of the said restrictions have the following rights, authorities, powers, interests and duties:

*Sec. 3.01* ... to construct[,] lay, maintain, reconstruct and repair proper and sufficient sewer systems, gas and water pipes and other pipes and conduits and connections therewith ... in or upon the easement strips shown on Plat....

\* \* \* \* \* \*

*Sec. 3.03* – To ... clean storm sewer systems, pipes, conduits and connections....

\* \* \* \* \* \*

*Sec. 3.05* Also, to convey and grant to others outside of the Site ... the right to use the ... storm sewer systems, water and gas pipes, and other pipes and conduits ... which may at any time from time to time be ... in the easement strips shown on the Plat.... The compensation received for such use or uses shall be held and expended as necessary by the Trustees ... for the maintenance, repair ... of such ... easement strips ... and the storm sewers and other improvements located within, upon and about the Site as the Trustees may deem necessary or proper....

\* \* \* \* \* \*

*Sec. 3.07* – To transfer and convey to any public authority any sewer system, storm sewer pipe, water pipe, or other pipe or conduit and appurtenances which may heretofore or hereafter been constructed by [homeowners] or by the Trustees....

\* \* \* \* \* \*

*Sec. 3.11* – To enter upon the said ... easement strips for the purpose of doing the things herein specified, or any of them.

\* \* \* \* \* \*

*Sec. 3.13* – To avail themselves of and exercise the rights and powers herein granted to them, provided that nothing herein contained shall be taken to compel the Trustees to make any payment or incur any liability in excess of the amount, which shall for the time being be in their hands as a result of assessments made against any of the owners of land in the Site....

On February 24, 1998, trustees brought a declaratory judgment action against homeowners to adjudicate the issue of who bears the responsibility for repairing and maintaining the tie walls. Trustees later amended their complaint to include the

City of Chesterfield ("Chesterfield") and the Metropolitan St. Louis Sewer District ("MSD") as defendants. During the bench trial (after opening statements), the trial court granted the motion for summary judgment filed by Chesterfield and joined by MSD.[6]

Over the course of two days, the trial court heard the testimony of six witnesses called by trustees and three witnesses called by homeowners. Additionally, the trial court received into evidence nineteen exhibits. After hearing the evidence, the trial court found in favor of homeowners. In pertinent part, the trial court issued the following judgement:

1. [Trustees] are hereby declared and adjudged to be responsible for the maintenance, upkeep, repair and/or replacement, as reasonably necessary, of the [t]ie [w]alls ...

2. [Homeowners] are not responsible for the maintenance, upkeep, repair and/or replacement of the [t]ie [w]alls ...

3. [Trustees] shall take all necessary actions to begin all necessary repairs or replacements such that work shall have commenced within 120 days of the date of this Judgment, and such work shall be completed within 180 days of the date of this Judgment;

4. The costs and expenses of all such work shall be paid from the funds of [trustees] which they hold in trust for the homeowners of Green Trails Estates, and to the extent such funds are insufficient, [trustees] shall make such assessments of all of the Green Trails Estates homeowners, equally and without attempting to secure any sole, greater or special payment or assessment from [homeowners], as are necessary to obtain sufficient funds to pay for the work ordered herein;

5. The costs of this proceeding shall be taxed against [trustees].

Trustees appeal.

When reviewing a declaratory judgment, our standard of review is the same as in any other court-tried case. *Guyer v. City of Kirkwood,* 38 S.W.3d 412, 413 (Mo.2001). The trial court's decision should be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.; Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). In applying this standard, appellate courts review both the law and the evidence of the case, giving deference to the trial court's opportunity to judge the credibility of the witnesses. *Cameron Mut. Ins. Co. v. Moll,* 50 S.W.3d 329, 332 (Mo.App. E.D. 2001).

Trustees' first point on appeal contends the trial court erred in determining that trustees are responsible for maintenance of the tie walls. Trustees argue the trial court erred because: 1) neither the plats nor the trust agreement grant trustees any obligation to maintain the easements where the tie walls are located; 2) the plats specifically grants the easement to St. Louis County; 3) there is no provision of the trust agreement which imposes any duty on trustees to maintain the tie walls, easements, storm sewers or drainage facilities; 4) trustees have never maintained the easement or tie walls; and 5) Missouri law provides that those who benefit from an easement share in proportion to their use in the cost of maintenance.

**6.** This Court previously dismissed trustees' appeal as to the granting of summary judgment in favor of Chesterfield and MSD. Chesterfield and MSD are no longer parties to this action on appeal.

In construing plats, courts attempt to give effect to the maker's intention as manifested by the plat, but reservations contained in plats are construed strongly against the grantor. *York v. Authorized Investors Group, Inc.*, 931 S.W.2d 882, 886 (Mo.App. E.D.1996). Also, courts are not limited just to words and markings on the plat, but the plat is considered in its entirety. *Id.* In construing a trust agreement, the intention of the parties is determined from the plain meaning of the language used, taken in light of the entire context of the instrument. *Id.* at 887.

Homeowners, as well as the trial court, cite to the factually similar case of *Mansur v. Trustees of Hickory Hill, Plat 3*, 895 S.W.2d 611 (Mo.App. E.D.1995), to support the contention that trustees are responsible for the tie walls. *Mansur* also was a declaratory judgment action in which the parties sought a determination of who bore responsibility for maintaining the tie wall linings of an open storm water system running across homeowners' land. *Id.* at 612. We held that trustees bore responsibility for maintaining the tie wall lining of the sewer system. *Id.* at 613.

Trustees argue that *Mansur* is distinguishable. First, trustees argue that Plats 1 and 3 specifically dedicated all easements, except those designated for other specific purposes, to St. Louis County and various utility companies. Trustees argue since the easements where the tie walls are located were not designated on either Plats 1 or 3 for a specific purpose, the easements were therefore dedicated to St. Louis County, and thus are not the responsibility of trustees. However, neither St. Louis County nor the various utility companies named on the plat are parties to this action on appeal. Furthermore, trustees failed to preserve an appeal of the summary judgment entered in favor of Chesterfield and MSD finding neither of those parties responsible for the tie walls. Therefore, trustees' argument that homeowners should be responsible for the tie walls because trustees dedicated to other entities any responsibility they might have for the tie walls by way of the language contained on the plats is without merit.

Second, trustees claim that, unlike the trust agreement in *Mansur*, the trust agreement in this case does not impose a "duty" on trustees to maintain the subdivision's storm and foul water systems. Trustees argue they are empowered by the trust agreement, but not obligated to maintain the subdivision's storm and foul water systems. However, Article III of the trust agreement is entitled "Rights, Authorities, Powers, Interest and *Duties* of Trustees." (emphasis added). Under Article III, a number of rights, authorities, powers, interests and duties of the trustees are listed. Amongst these is the duty to "construct[,] lay, maintain, reconstruct and repair proper and sufficient sewer systems ... and other pipes and conduits and connections therewith ... in or upon easement strips shown on Plat" and to "clean storm sewer systems, pipes conduits and connections...." We find that this language, taken in light of, and in addition to the entire context of the trust agreement, indicates trustees had a duty to maintain the tie walls.

Third, trustees argue that unlike the trustees in *Mansur*, they have never maintained the tie walls. Trustees further contend that the tie walls are not located entirely within the twenty-foot easements located behind homeowners' lots. Additionally, trustees argue these easements are not identified as drainage easements on the plats. Furthermore, trustees state the tie walls were not designed to be part of the drainage system of subdivision, but were instead designed to hold back soil in

order to provide buildable areas for the upper and lower lots. However, the trial court heard testimony from the homeowners' expert witness that "[t]he tie walls are definitely part of the storm sewer system for [the] subdivision." Also, the designer of the subdivision, who was called as a witness by trustees, answered affirmatively when asked if a purpose of the tie walls was to assist the storm water system function as he had designed. Giving deference to the trial court's opportunity to judge the credibility of the witnesses, we find that the tie walls were part of the subdivision's storm sewer system or a pipe or conduit connected therewith. Furthermore, although trustees, unlike the trustees in *Mansur*, had never maintained the tie walls, the lack of past maintenance does not alleviate trustees duty to maintain the tie walls pursuant to the trust agreement.

> Finally, trustees, citing *Mansur*, argue: Where the parties themselves have placed a knowledgeable, uniform, consistent and long-time construction upon the provisions of an **ambiguous contract**, such a construction is persuasive and ordinarily will be accepted by the courts. *Mansur*, 895 S.W.2d at 613 (*quoting Leggett v. Missouri State Life Insurance Company*, 342 S.W.2d 833, 852 (Mo.banc 1960)) (emphasis added).

We find that the trust agreement in this case is unambiguous; therefore this language from *Mansur* and *Leggett* is inapplicable.

Furthermore, trustees admit the provisions of the plats and trust agreement are unambiguous, yet attempt to argue homeowners must maintain the tie walls because homeowners have regularly mowed the easements and planted trees and bushes near the base of the lower tie wall. Trustees contend that since homeowners use and benefit from the tie walls, home-owners should contribute to the maintenance of the tie walls in proportion to their use or benefit. However, along with the evidence that the tie walls were designed when the subdivision was designed, there was no evidence that either homeowners or trustees had maintained or repaired the tie walls over the course of time since the subdivision was designed and built, hence their current state of disrepair. This supports a finding that neither party has placed a knowledgeable, uniform, consistent and long-time construction upon a provision regarding the tie walls.

In fact, one of the homeowners, George Marble, testified that when he bought his home approximately twenty-one years ago, he was told by the developer and original trustee that the tie walls were the responsibility of the trustees. Additionally, there was testimony that the tie walls were in such disrepair that their failure was a contributing factor to the flooding of the streets of the subdivision on occasion. Furthermore, the homeowners' expert witness testified that no single homeowner has the means to legally repair the tie walls because repair work would require homeowners to trespass onto one another's property because each section of the tie wall would have to be repaired simultaneously to be effective. Therefore, the entire subdivision benefits from properly maintained and repaired tie walls and trustees can more easily effectuate the maintenance and repair of the tie walls.

Thus, we find the trial court's decision is *not against the weight of the evidence*, does not erroneously declare or apply the law, and there is substantial evidence to support the judgment. Point denied.

Trustees' second point on appeal contends the trial court erred in directing trustees to commence and complete the repair of the tie walls within a definite time period and to pay for the repairs

using funds held in trust for the subdivision and to make additional assessments, if necessary, to fund the repairs. Trustees, in their point relied on, assert the trial court, in effect, issued a mandatory injunction that was improper because homeowners did not properly request nor plead injunctive relief. Furthermore, trustees, in their point relied on, state the trial court's judgment conflicts with section 3.13 of the trust agreement.

Trustees' final point on appeal contends the trial court erred in failing to permit the city engineer of Chesterfield to testify as an expert witness due to trustees' failure to identify him as an expert.

■ "Arguments raised in the points relied on which are not supported by argument in the argument portion of the brief are deemed abandoned and present nothing for appellate review." *Real Estate Investors v. Design Group*, 46 S.W.3d 51, 59 (Mo.App. E.D.2001). When faced with a defective brief, an appellate court should not become the party's advocate by deciphering arguments. *Weisenburger v. City of St. Joseph*, 51 S.W.3d 119, 125 (Mo.App. W.D.2001); *see also Martin v. Morgan*, 61 S.W.3d 300, 302 (Mo.App. E.D.2001). A party must develop the contention raised in the point relied on in the argument section of the brief or the point is not preserved. *Real Estate Investors Four, Inc.*, 46 S.W.3d at 59. Arguments omitted from an appellant's initial brief may not be supplied by a reply brief because a respondent has no opportunity to address the argument. *Coyne v. Coyne*, 17 S.W.3d 904, 906 (Mo.App. E.D.2000).

■ Trustees' argument section following their second point relied on consists of five sentences. The first sentence, under the heading "STANDARD OF REVIEW" states "The Applicable standard is that discussed in Point I." Trustees cite to a single case for the general proposition of law that a party seeking a mandatory injunction carries a heavy burden. The rest of trustees' argument is conclusory and lacking in citations to the record on appeal. Trustees do address their second point on appeal more fully in their reply brief; however, we are precluded from addressing these arguments because homeowners had no opportunity to respond to the arguments set forth in the reply brief. Trustees' argument does not preserve this point for review.

■ Trustees' argument section following their third point relied on consists of three paragraphs, totaling three-and-one-half sentences. Again, the first sentence, under the heading "STANDARD OF REVIEW" states "The Applicable standard is that discussed in Point I." The second and third sentences are conclusory and devoid of analysis. The final sentence of trustees' argument ends abruptly and does not contain an ending punctuation mark. Trustees' argument does not preserve this point for review. Therefore, trustees' second and third points on appeal are hereby dismissed.

Based on the foregoing, we affirm the judgment of the trial court.

PAUL J. SIMON and CLIFFORD H. AHRENS, J., concur.