**Nancy L. DEVINO, Respondent,**

v.

**Stanley C. STARKS and Virginia L. Starks, Appellants.**

**No. WD 62737.**

Missouri Court of Appeals, Western District.

April 30, 2004.

Thomas M. Schneider, Columbia, MO, for appellants.

Harold L. Walther, Columbia, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and ROBERT G. ULRICH, Judge.

JOSEPH M. ELLIS, Chief Judge.

Stanley and Virginia Starks appeal from a judgment entered in the Circuit Court of Boone County in favor of Respondent Nancy Devino in a case involving a dispute over the size of the lot conveyed to Respondent when she purchased a home from Appellants. For the following reasons, we reverse the trial court's judgment.

Prior to the transaction at issue, Appellants owned two adjacent lots within the Green Meadows Subdivision in Columbia, Missouri, designated Lots 24 and 25. A house had been built on Lot 25, but Lot 24 was undeveloped. Lot 24 is bisected diagonally by a sixteen-foot wide utility and drainage easement upon which the city would not permit a structure to be built. In order to allow for a home to be built on Lot 24, on April 28, 1998, Appellants filed a "transfer to adjoining property survey" in the Boone County Recorder's Office which surveyed off a 17.58–foot strip of land from Lot 25 to Lot 24 along the border between the two properties.

In 2001, Appellants listed the house on Lot 25 for sale. On July 10, 2001, Respondent toured the home with her realtor, her sister and Stanley Starks. After deciding to purchase the property, Respondent had her real estate agent prepare a contract for the purchase of the home. The contract identified the property to be conveyed as "L 25 Green Meadows Subdv. more commonly described as 2909 Skylark." After Respondent signed the contract, it was faxed to Appellants. Appellants accepted Respondent's offer and signed the contract on July 14, 2001.

When the sale of the home closed on July 25, 2001, the warranty deed prepared by the title company and given to Respondent described only the 17.58–foot strip that had been surveyed off of Lot 25 in 1998. That deed was subsequently filed without any of the parties noticing the error.

In March 2002, the parties discovered the mistake on the warranty deed and became involved in a dispute over whether Respondent had purchased Lot 25 with or without the 17.58–foot strip that had been surveyed off in 1998. Respondent contended that, since the contract referenced the sale of "L 25 Green Meadows Subdv."

without mentioning the surveyed land, she had purchased Lot 25 as originally platted in the 1960s. Appellants contended that they had only intended to transfer Lot 25 as altered by the 1998 survey and pointed to the MLS listing which was incorporated into the contract by reference and which set forth the dimensions of the property as altered by the 1998 survey.

On August 23, 2002, Respondent filed a petition in the Circuit Court of Boone County requesting specific performance of the contract by conveyance of all of the original Lot 25 property to her. On September 16, 2002, Appellants filed their answer and counterclaim in which they asked for the court to reform the erroneous deed to convey Lot 25 as modified by the 1998 survey to Respondent.

The trial court heard the case on February 13, 2003. On March 9, 2003, the trial court issued its judgment and separate findings of fact and conclusions of law. The trial court found that the parties had been mutually mistaken when they exchanged a deed conveying only the surveyed 17.58–foot strip of land and that reformation of the deed was necessary. The trial court found that the sales contract was unambiguous and conveyed all of Lot 25 as platted in 1968 to Respondent. The court therefore ordered Appellants to "specifically perform the contract conveying to [Respondent] in fee simple absolute 'all of Lot 25 in Block One (1) of Green Meadows Subdivision as shown by plat recorded in Plat Book 10, Page 20, Boone County Records.'" Appellants bring two points on appeal challenging that judgment.

"Our review of a court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)." *JCBC, L.L.C. v. Rollstock, Inc.*, 22 S.W.3d 197, 200 (Mo. App. W.D.2000). "As such, we will affirm the trial court's judgment for the respondent unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

■ There is no question that the trial court properly found that the deed did not reflect the intention of any of the parties, was inconsistent with the sales contract and needed to be reformed.[1] The dispute between the parties arises over the propriety of the revisions to the deed ordered by the trial court. Appellants contend that the trial court should not have ordered them to convey the 17.58–foot strip of land from Lot 24 along with Lot 25 to Respondent.

In their first point on appeal, Appellants argue that the sales contract unambiguously transferred only that portion of the lot remaining after the 1998 survey and that the trial court erred in considering extrinsic evidence to reach a contrary conclusion. The trial court, while finding that the contract language was indeed unambiguous, found that the reference to "Lot 25" in the contract unambiguously referred to the lot as originally platted in 1968.

■ We first address the propriety of referring to parol evidence to establish the boundaries of the property to be conveyed. "Where a written contract is unambiguous and complete on its face, parol evidence may not be introduced to vary or contradict the terms of the agreement." *Hel-*

1. To be entitled to reformation of a deed for mutual mistake, the party seeking reformation has the burden to show that: 1) there is a preexisting agreement between the parties affected by the proposed reformation which is consistent with the change sought; 2) a mistake was made in that the deed was prepared other than had been agreed upon; and 3) the mistake was mutual, *i.e.*, was common to both parties. *Morris v. Brown*, 941 S.W.2d 835, 840 (Mo.App. W.D.1997).

*terbrand v. Five Star Mobile Home Sales, Inc.,* 48 S.W.3d 649, 658 (Mo.App. W.D. 2001). "The trial court cannot consider inadmissible parol evidence in interpreting a contract even if the evidence was admitted without objection." *Id.*

 When dealing with a contract for the sale of real property, however, where the contract fails to set forth a full legal description of the property, the trial court may properly consider parol evidence to properly identify the property being conveyed as long as the contract " 'afford[s] the means whereby the identification may be made perfect and certain by parol evidence.' " *Peet v. Randolph,* 33 S.W.3d 614, 617 (Mo.App. E.D.2000) (quoting *Herzog v. Ross,* 355 Mo. 406, 196 S.W.2d 268, 270 (1946)); *see also Anderson v. Village of Jacksonville,* 103 S.W.3d 190, 197 (Mo. App. W.D.2003). Thus, if a sufficient description of the property to allow for its identification is provided in the contract, an absent legal description may be determined from the public records. *Herzog,* 196 S.W.2d at 270.

While the sales contract in the case at bar unambiguously conveys Lot 25 of the Green Meadows Subdivision from Appellants to Respondent and reflects that this lot is "more commonly described as 2909 Skylark," the actual physical boundaries of the land to be conveyed cannot be ascertained solely from the language of the contract. Without resorting to parol evidence, the court could not possibly determine the legal boundaries of Lot 25 of the Green Meadows Subdivision. Moreover, consulting the public records to establish the specific boundaries of the lot being conveyed where they are not set forth in the contract, while technically relying upon

parol evidence, does not run afoul of the parol evidence rule where, as here, such evidence is not being utilized to vary or contradict the language of the contract. Accordingly, the trial court could properly consider such parol evidence to perfect the identification of the property to be conveyed in order to effect specific performance of the contract. *Peet,* 33 S.W.3d at 617.

 We next consider whether the trial court properly interpreted the sales contract. "The '[i]nterpretation of a contract is a question of law, which this [c]ourt reviews de novo.' " *Helterbrand,* 48 S.W.3d at 658 (quoting *Goldstein & Price, L.C. v. Tonkin & Mondl, L.C.,* 974 S.W.2d 543, 551 (Mo.App. E.D.1998)).

The trial court found that the contract clearly reflected the parties' intent to convey Lot 25 as originally platted in 1968. In reaching this conclusion, the trial court relied on the fact that a city ordinance defined a "lot" as a tract of land "set forth as a lot on an approved recorded plat." The court concluded that, because the 1968 plat was the only recorded "plat" related to the lot, Lot 25 still legally included the 17.58–foot strip.

In reaching this conclusion, the trial court apparently chose to disregard the city ordinances that allow for the transfer of property from one lot to another. The record reflects that, under the applicable city ordinances, small parcels of land may be conveyed from any lot to an adjoining lot provided no additional lots are created and no zoning ordinances are violated.[2] In the case at bar, the 1998 survey conveyed the 17.58–foot strip from Lot 25 to Lot 24,[3]

---

**2.** Section 25–18 of the Columbia Code of Ordinances allows for free sale or exchange of small parcels of land between adjoining prop-

erties provided no additional lots are created and no zoning ordinances are violated.

**3.** The "transfer to adjoining property survey" filed by Appellants in 1998 states that the

and that survey was properly recorded. No challenge was made at trial to the propriety of this conveyance or the manner in which it was accomplished. Thus, at the time the contract was executed, as a matter of public record, the 17.58–foot strip was part of Lot 24 and was not part of Lot 25. The trial court erred as a matter of law in finding to the contrary.

Furthermore, Section 442.380, RSMo 2000, states that "[e]very instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner herein prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated." Section 442.390, RSMo 2000, goes on to provide that every properly recorded instrument "shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice." Thus, under § 442.390, Respondent is deemed to have had constructive knowledge of the 1998 survey conveying the 17.58–foot strip of land from Lot 25 to Lot 24 at the time the sales contract

was executed. *Black v. Adrian,* 80 S.W.3d 909, 913–14 (Mo.App. S.D.2002).

■■■■ Under the clear, unambiguous language of the contract, Appellants were to convey Lot 25 to Respondent. Nothing in the contract indicates the intention of the parties to convey anything other than Lot 25 as it existed at the time the contract was executed, and the contract does not provide for the conveyance of any land from Lot 24. Thus, the contract did not call for the conveyance of the 17.58–foot strip of land to Respondent.[4]

Moreover, this interpretation of the contract is consistent with the property dimensions reflected on the "MLS listing data sheet" that was incorporated into the contract by reference.[5] The evidence presented at trial indicates that the dimensions in the MLS listing were consistent with the measurements of the lot after the 17.58–foot strip had been surveyed off.

In its judgment, the trial court also noted evidence presented at trial that, while showing Respondent the property, Mr. Starks had asked Respondent if she wanted him to remove a large landscaping rock that was located within the 17.58–foot strip. The trial court further noted that Respondent had done some landscaping on

surveyed strip of land is being transferred from Lot 25 to Lot 24 and references the original plats for each lot.

**4.** " 'Where the terms of the contract are clear, this Court does not supply additional terms, but applies the agreement as written.' " *Brewer v. Devore,* 960 S.W.2d 519, 522 (Mo.App. S.D.1998) (quoting *Wintermute v. Delgado,* 919 S.W.2d 248, 250 (Mo.App. S.D.1996)). " 'This court cannot make a contract for the parties they did not make or impose upon them obligations not assumed in the contract.' " *Id.* (quoting *Dalton v. Rainwater,* 901 S.W.2d 316, 318 (Mo.App. S.D.1995)).

**5.** Respondent's realtor, Patricia Waid, testified that she prepared the contract for the sale of the house and filled in the blanks on

the contract form. She stated that she wrote in the legal description of the property as "L25 Green Meadows" and identified the street address as 2909 Skylark. Waid testified that she took this description of the property from the MLS listing data sheet. Waid stated that she referenced the MLS listing number for the data sheet in the contract, attached the MLS listing data sheet to the contract, and intended for it to be part of the contract. Waid further testified that she filled in the portion of the contract incorporating the MLS listing data sheet prior to Respondent signing the contract. Respondent admitted having a copy of the MLS data sheet and having read it prior to signing the contract.

part of the 17.58–foot strip after having taken possession of the house and that Appellants had not done anything about it until March 2002.

 Contrary to the trial court's conclusion, this evidence does not establish that the parties intended to convey Lot 25 as originally platted in 1968. The fact that Respondent did some landscaping that crossed over a short distance into the 17.58–foot strip does not establish that the parties intended to convey the lot as originally platted and include the entire 17.58–foot strip.[6] Likewise, Mr. Starks' offer to remove a rock that was located on the 17.58–foot strip does not establish an intent to convey the entire 17.58–foot strip to Respondent. Indeed, Respondent's testimony reflects that she thought that the property she was purchasing included about half of the 17.58–foot strip. Accordingly, the trial court's finding that the parties intended to convey the lot as originally platted in 1968 is not supported by the evidence and is against the weight of the evidence.

Having reviewed the contract and the record, we find that the clear, unambiguous language of the contract calls for the conveyance of Lot 25 as it existed at the time the contract was executed, and the public records clearly establish that the 17.58–foot strip was not part of Lot 25 at that time. The property dimensions contained in the MLS listing incorporated into the contract by reference also reflect that the 17.58–foot strip was not to be conveyed with the property. The parol evidence considered by the trial court related to the behavior of Respondent and Mr. Starks is not sufficient to warrant disregarding the language of the contract so as to include the 17.58–foot strip from Lot 24 in the

transaction. The judgment of the trial court is reversed, and the cause is remanded to the trial court for the sole purpose of its entry of a new judgment consistent with this opinion.

All concur.

---

**6.** Moreover, where the language of a contract is clear and unambiguous, evidence related to the parties' subsequent actions is not to be considered in construing the meaning of the contract. *Goldstein,* 974 S.W.2d at 551.