Keith GOAD, Plaintiff–Respondent,

v.

Edward H. ULRICH and Mynette J. Ulrich, Defendants–Appellants.

No. 27544.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 16, 2007.

Gary W. Allman, Allman, Ingrum & Wilson, P.C., Springfield, MO, for Appellants.

Joseph A. Bohrer, Yates, Mauck, Bohrer, Elliff & Croessmann, P.C., Springfield, MO, for Respondent.

GARY W. LYNCH, Judge.

Respondent Keith Goad ("Goad") brought an action in the Circuit Court of Stone County in three counts against Appellants Edward H. Ulrich and Mynette J. Ulrich, husband and wife, (collectively, "the Ulriches"), seeking to quiet title to and eject the Ulriches from Lot 8 in Block 11 of Twin Island Heights and to obtain a mandatory injunction against the Ulriches to remove all improvements from said Lot 8. The trial court entered judgment in favor of Goad on all counts. The Ulriches appeal, claiming that the trial court erroneously declared and applied the law in defining the boundaries of Lot 8 by the initial plat of Twin Island Heights rather than by the subsequently filed, amended plat of Twin Island Heights. We agree and reverse.

### (1) Factual and Procedural Background

The parties' common predecessor-in-title, Widmore Development Company ("Widmore"), filed in the Office of the Recorder of Deeds of Stone County, on December 18, 1970, in Plat Book 5, at page 63, a plat entitled "TWIN ISLAND HEIGHTS" and sub-titled "LOT 20, BL'K.

7, & BL'K. 9 THROUGH BL'K. 19" ("Initial Plat"). The description in the Initial Plat states:

> [Widmore], a Corporation of the State of Missouri, hereby certify [sic] that it is the owner in fee simple of the following described lands: [metes and bounds legal description is intentionally omitted].
>
> Said lands have been subdivided as shown hereon and said subdivision shall be known as LOT 20 OF BLOCK 7, AND BLOCK 9 THROUGH BLOCK 19 OF TWIN ISLAND HEIGHTS, Roads [sic] as shown hereon are relinquished and dedicated for the use of the public.

Apparently, the real estate described in this plat is not located within any city, town, or village.

Less than six months later, on June 3, 1971, Widmore filed in the Stone County Recorder's Office, in Plat Book 5, at page 85, another plat also entitled "TWIN ISLAND HEIGHTS" and sub-titled "LOT 20 BL'K. 7 & BL'K. 9 THROUGH BL'K. 19." However, this plat has the words "amended plat" above the title, "TWIN ISLAND HEIGHTS" ("Amended Plat"). The description in the Amended Plat states:

> [Widmore], a Corporation of the State of Missouri, hereby certify [sic] that it is the owner in fee simple of the lands comprising Lot 20 of Block 7 and Block 9 through Block 19 of Twin Island Heights, the Plat of said subdivision being recorded in Book _____ at Page _____, and has amended said Plat as shown hereon.

The Amended Plat also contains a Surveyor's Certification which states: "I certify that I have prepared this plat to correct lot sizes and dimensions as now established."

The relevant chain of title from Widmore to the parties exclusively includes duly executed and recorded warranty deeds as follows:

| Date of Recording | Grantor | Grantee | Legal Description in Deed |
|---|---|---|---|
| March 8, 1972 | Widmore | Shinkle | Lot 9, Block 11, Twin Island Heights, subject to restrictions and easements of record. |
| September 4, 1980 | Shinkle | Poynter | Lot 9, Block 11, Twin Island Heights, subject to restrictions and easements of record. |
| April 16, 1992 | Poynter | Ulrich | Lot 9, Block 11, Twin Island Heights, a subdivision as per the recorded amended Plat in Plat Book 5 at Page 85, Stone County, Missouri. Subject to easements and restrictions of record, if any. |
| June 24, 1981 | Widmore | Head | All of Lot 8 in Block 11 in Twin Island Heights Subdivision, as per the recorded plat thereof and subject to easements and restrictions of record. |
| June 20, 1994 | Head | Goad | Lot 8, Block 11, Twin Island Heights Subdivision per the recorded plat thereof. Subject to easements and restrictions of record, if any. |

In 2003, a dispute arose between Goad, the record owner of Lot 8, and the Ulriches, the record owners of Lot 9, related to an area of land along the boundary between Lot 8 and Lot 9 ("disputed area"). As fate would have it, the disputed area was within the boundaries of Lot 8 as shown and described on the Initial Plat, but within the boundaries of Lot 9 as shown and described on the Amended Plat. Goad filed a three-count petition in the Circuit Court of Stone County against the

Ulriches, seeking to quiet his title in the disputed area as being within the boundaries of Lot 8 as defined by the Initial Plat; seeking to eject the Ulriches from the disputed area; and seeking a mandatory injunction requiring the Ulriches to remove their improvements from the disputed area. The trial court entered judgment in favor of Goad on all counts as prayed in the petition, concluding as a matter of law that:

> [T]he parties are vested with the title to Lot 8 (in the case of [Goad]) and Lot 9 (in the case of [the Ulriches]) in Block 11, Twin Island Heights, according to the [Initial] Plat which was recorded in Book 5 at Page 63 in the Office of the Recorder of Deeds of Stone County Missouri, on December 18, 1970.

This appeal by the Ulriches followed.

### 1) *Standard of Review*

In court-tried cases, the standard of appellate review is well defined. The decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). An appellate court must give considerable deference to judgments of the trial court which turn on factual evaluations and determinations, but make its own independent evaluation of the trial court's declarations or applications of law. *Phillips v. Authorized Investors Group, Inc.*, 625 S.W.2d 917, 919 (Mo.App.1981). Additionally, deference to the trial court's findings is not required when the evidence is uncontroverted and the case is virtually one of admitting the facts, or when the evidence is not in conflict. *Sutton v. Dir. of Revenue*, 20 S.W.3d 918, 924 (Mo.App. 2000).

### 2) *Discussion*

█ In their sole point relied on, the Ulriches contend that the trial court erroneously declared and applied the law in concluding that the references to "Twin Island Heights," as contained in the Widmore–to–Shinkle and the Shinkle–to–Poynter deeds, and to "Twin Island Heights, per the recorded plat thereof," in the Widmore–to–Head and the Head–to–Goad deeds, referred only to the Initial Plat. The Ulriches posit that these references only refer to the Amended Plat, which, upon its filing, became a substitute for the Initial Plat.

In order to transfer a parcel of real estate that is smaller than one-sixteenth of a section and lying outside of a city, town, or village, Widmore was required to record a plat which particularly described the lots to be transferred. §§ 137.185 and 442.380.[1]

---

1. References to statutes are to RSMo ·2000, unless otherwise indicated.
  Section 137.185.1 provides:
    In all cases where any person, company or corporation may hereafter divide any tract of land into parcels less than one-sixteenth part of a section or otherwise, in such manner that such parcels cannot be described in the usual manner of describing lands in accordance with the surveys made by the general government, it shall be the duty of such person, company or corporation to cause such lands to be surveyed and a plat thereof made by a surveyor in the county where such lands are situated, which plat shall particularly describe and set forth the lots or parcels of land surveyed, as aforesaid; the lots and blocks shall be numbered in progressive numbers, and the plats shall show the number, location and quantity of land in each lot, and the description of the tract of land so divided; provided, that whenever it shall appear to the county commission of the county in which any such tracts are situated that tracts or parcels of land less than one-sixteenth of a section, and lying outside of the limits of any incorporated city, town or

Widmore complied with these statutes when it recorded the Initial Plat. As long as Widmore owned the real estate described in the Initial Plat, it had the right to re-arrange and re-number the lots, *Clark v. Ferguson*, 346 Mo. 933, 144 S.W.2d 116, 118 (1940), which it did by recording the Amended Plat. All subsequent purchasers of any of the lots within the platted property purchased their lot with constructive notice of the contents of the Initial Plat and the contents of the Amended Plat. § 442.390;[2] *Devino v. Starks*, 132 S.W.3d 307, 312 (Mo.App. 2004); *Black v. Adrian*, 80 S.W.3d 909, 913–14 (Mo.App.2002).

■ In construing a plat, courts attempt to give effect to the maker's intention as manifested by the plat, considering the plat in its entirety. *York v. Authorized Investors Group, Inc.*, 931 S.W.2d 882, 886 (Mo.App.1996). As explicitly stated in the Amended Plat, Widmore intended to amend the Initial Plat. This included amending and redefining the sizes, dimensions, and locations of the boundary lines of Lot 8 and Lot 9. The initial deeds by Widmore of Lot 8 and Lot 9 each occurred after the recordation of both the Initial Plat and the Amended Plat. This means that all subsequent purchasers had notice that the Amended Plat amended the Initial Plat "to correct lot sizes and dimensions as

now established." § 442.390; *Devino*, 132 S.W.3d at 312; *Black*, 80 S.W.3d at 913–14.

■ There is only one subdivision entitled "TWIN ISLAND HEIGHTS" and sub-titled "LOT 20 BL'K. 7 & BL'K. 9 THROUGH BL'K. 19." *See Clark*, 144 S.W.2d at 118. At all relevant times after the recordation of the Amended Plat, "TWIN ISLAND HEIGHTS" was publicly defined by Widmore, its owner, by the Initial Plat as amended by the Amended Plat. "By virtue of the reference to the plat in the legal description of the lot, the plat is considered as a part of the deed." *Udo Siebel–Spath v. Constr. Enterprises, Inc.*, 633 S.W.2d 86, 88–89 (Mo.App.1982) (citing *City of Mexico v. Baysinger*, 313 S.W.2d 166, 169–170 (Mo.App.1958); *Lindsay v. Smith*, 178 Mo.App. 189, 166 S.W. 820, 822 (1914)). The plat is "as much a part of the deed as if it had been fully incorporated in it." *Id.* (quoting *Whitehead v. Ragan*, 106 Mo. 231, 17 S.W. 307, 307 (1891)). Therefore, any references to "Twin Island Heights" or "Twin Island Heights, per the recorded plat thereof," in the deeds subsequently conveying Lot 8 or Lot 9 incorporated and referenced the Initial Plat as amended by the Amended Plat. Nothing in either of Widmore's deeds indicates that either Widmore or the grantees intended conveyance of anything other than Lot 8 and Lot 9 as they existed in accordance with the public records at the

village, have been conveyed without having been surveyed and platted and the plat thereof recorded as herein provided, the commission may require the county surveyor, by order of record, to survey and plat such tract or tracts of land and record the plat so made, all of which shall be done at the expense of the owner of such tracts of land at the time the survey is made.

Section 442.380 provides:

Every instrument in writing that conveys any real estate, or whereby any real estate may be affected, in law or equity, proved or acknowledged and certified in the manner

herein prescribed, shall be recorded in the office of the recorder of the county in which such real estate is situated.

2. Section 442.390 provides:

Every such instrument in writing, certified and recorded in the manner herein prescribed, shall, from time of filing the same with the recorder for record, impart notice to all persons of the contents thereof and all subsequent purchasers and mortgagees shall be deemed, in law and equity, to purchase with notice.

time each deed was executed. *See Devino*, 132 S.W.3d at 312. The trial court's conclusion that such references only referred to the Initial Plat erroneously declares and erroneously applies the law.

Our conclusion is analogous to and supported by *Clark, supra.* In that case, after the platting of Oakview Addition in Popular Bluff by the recordation of the initial plat of that name, a re-survey of Oakview Addition was recorded. *Id.* at 117. The re-survey described the same land as the initial plat, but re-arranged the lots and lot numbers, including, among other things, changing the location of Lot 27. *Id.* After recordation of the re-survey, plaintiffs' predecessor-in-title was conveyed "Lot 27 in Oakwood Addition." *Id.* The Supreme Court determined that following the recording of the re-survey, a description of property as being in "Oakview Addition" meant such property as is located by the re-survey of that addition. *Id.* at 118.

Goad attempts to distinguish *Clark* by stating that "it seems to stand for the proposition that a court can consider errors in a conveyance." This proposed distinction is without merit, in that the plaintiffs did not seek reformation due to an erroneous legal description, but rather sought to quiet title based upon the legal description contained in their deed—"Lot 27 in Oakwood Addition." *Id.* at 117.

Our conclusion in the instant case is also in accord with *Devino, supra.* In that case, the Starks owned Lots 24 and 25 in Green Meadows Subdivision in Columbia. *Id.* at 309. In order to build a house on Lot 24, the Starks recorded a "transfer to adjoining property survey," which surveyed off a 17.58–foot strip of land from Lot 25 and added it to Lot 24. Thereafter, the Starks entered into a contract for sale with Devino as purchasers of: "L 25 Green Meadows Subdv. [M]ore commonly described as 2909 Skylark." *Id.* There arose a dispute as to whether or not Lot 25 included the 17.58–foot strip of land. *Id.* The Devinos claimed that they contracted to buy Lot 25 as originally platted, and the Starks claimed that they only agreed to sell Lot 25 as it existed on the date of the contract for sale. *Id.* at 310. The Western District of our Court found: "[T]he clear, unambiguous language of the contract calls for the conveyance of Lot 25 as it existed at the time the contract was executed, and the public records clearly establish that the 17.58–foot strip was not part of Lot 25 at that time." *Id.* at 313.

Likewise, in the case at bar, the clear and unambiguous language of all of the relevant deeds conveys either Lot 8 or Lot 9 as it existed on the date each deed was executed. On each such date, the public records clearly establish that the disputed area was a part of Lot 9, as shown on the Initial Plat as amended by the Amended Plat, and not a part of Lot 8. The trial court's conclusion, that the deeds referred only to the Initial Plat, thereby placing the disputed area within Lot 8 as shown and described in that plat, erroneously applies the law.

### 3) *Decision*

The trial court's judgment is reversed.

BATES, P.J., and GARRISON, J., concur.