**Jessica Kristin LEE, et al., Appellants,**

v.

**Fred BASS, et ux., Respondents.**

**No. WD 65429.**

Missouri Court of Appeals,
Western District.

Feb. 20, 2007.

Mark Jeffrey Bredemeier, Lee's Summit, MO, for appellant.

David G. Sperry, Independence, MO, for respondent.

Before JAMES M. SMART, JR., P.J., THOMAS H. NEWTON, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Jessica Kristin Lee, by her next friend, Sherry Lee, and Kristopher Lee appeal the judgment of the Circuit Court denying their claims for equitable relief in connection with a real estate transaction entered into between Fred and Susan Bass and Rex Lee, deceased, the father of Kristopher and Jessica.

The judgment is reversed, and the case is remanded for further proceedings.

### Background

This dispute involves residential property in Independence, Missouri. In 1993, Fred Bass was the record owner of the property in question. Fred had married Susan Bass. The Basses decided to occupy a house that Susan Bass already owned. The Basses wanted to sell Fred's house. The house was on the market from December 1993 to May 1994, when they discussed the sale of the house with a friend, Rex Lee, who wanted to buy it.

The parties agreed on a sale price of $84,500. The house was subject to a mortgage bearing an interest rate of nine per

cent and having a balance of approximately $71,500. The evidence shows that the Basses planned to sell the house to Rex Lee subject to the mortgage for a down-payment of $13,000, which represented their equity. Fred Bass's monthly mortgage payments, including escrow for taxes and insurance, were at that time $691.48. Rex Lee had sufficient cash that he could pay the Basses for Fred's equity and assume the mortgage payments.

The parties had an initial plan, reflected by a contract they signed, for Rex Lee to pay the Basses for the equity and to assume the indebtedness. The parties discovered, however, that a problem with Lee trying to assume the mortgage was the presence of a "due on sale" clause in Fred Bass's note. Therefore, the parties, who were acting on their own without benefit of legal counsel, decided to forego the idea of a regular contract for the sale of real estate. They abandoned the initial contract they had already signed. They decided instead to adopt a lease contract with purchase option, thinking that this would be a way to avoid having the lender declare the note due and payable in full. They used a form obtained from an office supply store. Susan Bass was the one who exercised responsibility as drafter to tailor the contract to the effective use of the parties.

The pertinent provisions of the option contract were as follows:

BY THIS AGREEMENT made and entered into on May 14th, 1994 between Fred & Susan Bass, herein referred to as Lessor, and Rex Lee, herein referred to as Lessee, Lessor leases to Lessee the premises situated at 3802 South Crysler Ave, in the City of Independence, County of Jackson, State of Missouri, and more particularly described as follows:

Together with all appurtenances, for a term of one years, to commence on May 17th, 1994, and to end on May 16th, 1995, at 12:00 o'clock p.m.

1. Rent. Lessee agrees to pay, without demand, to Lessor as rent for the demised premises the sum of Six Hundred Ninty (sic) one & 48/100 Dollars ($691.48) per month in advance on the 1st day of each calendar month beginning June 1st, 1994, payable at 19111 E. Truman Rd. City of Independence, State of Missouri, or at such other place as Lessor may designate.

2. Security Deposit. On execution of this lease, Lessee deposits with Lessor no/100------Dollars ($-0-), receipt of which is acknowledged by Lessor, as security for the faithful performance by Lessee of the terms hereof, to be returned to Lessee, without interest, on the full and faithful performance by him of the provisions hereof.

. . . .

17. Default. If any default is made in the payment ~~of rent~~ or any part thereof, at the times hereinbefore specified, or if any default is made in the performance of or compliance with any other term or condition hereof, this lease, at the option of Lessor, shall terminate and be forfeited, and Lessor may re-enter the premises and remove all persons therefrom. Lessee shall be given written notice of any default or breach, and termination and forfeiture of the lease shall not result if, within 30 days of receipt of such notice, Lessee has corrected the default or breach or has taken action reasonably likely to effect such correction within a reasonable time.

. . . .

19. Binding Effect. The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assign of the parties hereto,

and all covenants are to be construed as conditions of this lease.

20. Purchase Option. It is agreed that Lessee shall have the option to purchase real estate known as: [blank] for the purchase price of Eighty four thousand five hundred no/100 Dollars ($84,500.00) with a down payment of Thirteen thousand and no/100 Dollars (13,000.00) payable upon exercise of said purchase purchase (sic) option, and with a closing date no later than ____ days thereafter. This purchase option must be exercised in writing no later than ____, 19__, but shall not be effective should the Lessee be in default under any terms of this lease or upon any termination of this lease.

In sum, the lease agreement gave possession to Lee, with no security deposit, and required Lee to pay all expenses associated with the property. The contract gave Lee the option to buy the property for $84,500, with a down payment of $13,000 payable on the exercise on the purchase option. Lee had one year in which to exercise his option. The contract did not specify a closing date.

Lee had obtained cashier's checks on May 12, 1994. He paid the Basses $13,000 two days later on May 14, the day the parties executed the contract. It is undisputed that Lee began residing on the property four days later, and began making payments each month to the Basses. These payments initially were $693.15, but increased at intervals over the next nine years whenever there was an increase in the escrow payment for taxes and insurance premiums. The payments went to $705.22 in April of 1995, then later to $735.78, then to $777.19. Lee's payments did not decrease if the payments due the mortgagee were decreased, either by a refinancing (as did occur when the Basses refinanced) or by an adjustment of escrow payments. Except for the fact that there was never a downward adjustment of the payment, and except for the fact that Rex Lee reimbursed the Basses for the mortgage company's late fee if he was late with his payment, Lee's payments were geared to the amount of the mortgage and escrow. The Basses made their mortgage payments from the payments sent by Rex Lee.

For tax purposes, the Basses treated the transaction as a rental of real estate, and not as a sale, depreciating the asset, and also treating the mortgage interest as an expense. The record does not reveal whether or how they reported the receipt of the $13,000 at the time of the contract. Rex Lee, in contrast, treated the transaction as a purchase, with a wraparound mortgage, claiming a deduction for the mortgage interest portion of his monthly payment.

In October, 2003, nine years after he began to live in the property, Rex Lee died at age 57. His children, as heirs,[1] sought to enforce the purported sale agreement by paying off the balance on the note and receiving a deed.

The Lees claim that the original written agreement was a contract for deed. They claim the original contract and the lease-option agreement should be read together with an eye toward harmonizing the parties' intentions in entering into these two different agreements. The Lees assert that the lease with option to buy was created only to provide the Basses with protection against triggering the due-on-sale

---

1. We assume that the children have standing to pursue Rex Lee's purported claims pursuant to an order of the Probate Division assigning Rex Lee's purported claims to the children, his heirs at law. If there were no such order creating standing for the children, we do not see how the trial court or this court would have jurisdiction.

clause in the event that the mortgage company found out about the sale. In other words, they claim that the lease with option to buy was mainly window dressing and not the full and real agreement between the parties. They claim that Lee, in effect, made a down payment on the property and the parties were carrying out an arrangement equivalent to a long-term contract for deed. Because Lee was deceased, the Lees had no direct testimony to support their position. Their evidence consisted of the documents pertinent to the transaction.

The Basses, in contrast, claim that the lease superseded the initial plan for a sale agreement. They also claim that the contract should be interpreted as specifying that Rex Lee was paying the sum of $13,000 for the *purchase of the right to exercise* an option within a year, and that Rex Lee *failed* to timely exercise his option within the one-year period permitted by the lease. They claim Lee was a mere tenant throughout. They say that Lee became a month-to-month tenant after the initial term of the lease expired. The Basses indicate that they were nice enough to allow him to keep living in the property and paying as rent an amount that corresponded to the calculation called for in the abandoned initial contract (which called for Rex Lee to pay the amount of the mortgage payment plus escrow for taxes and insurance; if the monthly payment increased, Lee's payment was to adjust upward accordingly; if the payment decreased, Lee was to keep paying at the higher level).

Upon Rex Lee's death, his children asserted an equitable interest in the property as Rex Lee's heirs and sought to enforce rights they asserted their father had under the contractual arrangements with the Basses. The Lees filed an action in Jackson County Circuit Court. Count I was a petition for specific performance of an alleged land sale agreement. Count II was a petition for recovery for breach of contract. Count III was a claim for monetary recovery based on a theory of unjust enrichment.

Fred and Susan Bass filed an answer and counterclaim. The counterclaim was for possession of the disputed property based on claims of ejectment and unlawful detainer (because Rex Lee's children took possession of the house and have been continuing monthly payments to the Basses under the same formula). The Basses also sought a declaration of the Basses' title to the property.

This dispute was tried in January 2005. After hearing evidence and arguments of counsel, the court took the matter under advisement, and in March 2005, issued findings of fact, conclusions of law, and judgment.

The court was understandably uncomfortable with trying to construe the two contracts (the original sale contract and the lease option contract) together as one contract as the Lees requested. The contracts were contradictory, at least on the face of things. The Lees failed to cite applicable authority for their position. The court determined that the purported sale agreement must yield to the lease-with-option.

The court interpreted the lease-option contract as specifying that the $13,000 was to purchase *the right* to an option, not to *exercise* the option. The option was to be exercised within one year from entering into the contract; the court found that the option was not exercised. The court denied all counts of the plaintiffs' petition. The court also found that the Basses were entitled to their request for a declaration of their title in the property. The court found the Basses had presented no evidence of a demand on the lease to vacate

the premises, and, thus, their claims for ejectment and unlawful detainer were denied. The Lees appeal to this court. They appeal the trial court's judgment on all counts in their original petition.

## Standard of Review

The Lees claim first that the trial court's judgment is against the weight of the evidence, and second that the judgment erroneously applied Missouri contract law.

The standard of review in this court-tried case is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32.

## Analysis

Susan Bass acknowledged that the original intention was for Rex Lee to assume the mortgage and they drew up the contract to sell the property to him on that basis. She testified that when they realized that selling it to him would trigger the due-on-sale clause in their mortgage, they decided instead to do the lease-option contract. The sale agreement was drafted first, and the lease-option agreement was drafted on the same day about two hours later.

Fred Bass's testimony corresponded to Susan's. He said that the Rex Lee failed to exercise the option within a year and that, at that point, he told Rex Lee that he could either stay as a month-to-month tenant or Fred could give him thirty days' notice to leave. Because Lee wanted to stay, Fred Bass said, the parties agreed to the month-to-month tenancy.

There is no dispute about the fact that Rex Lee paid $13,000 to the Basses at or about the time of the signing of the option contract, and there is no doubt that the sum of $13,000 represented the parties' view of Fred Bass's equity in the property. There is no dispute that Rex Lee made payments to the Basses geared to the mortgage and escrow payments, and that the Basses then made payments to the mortgage company. The monthly payments made by Rex Lee always were odd amounts corresponding to an amount that had been determined to be due the mortgagee—such as, for instance, $735.78; the payment was never a rounded number such as one would expect with a negotiated lease agreement. There is also no indication that the Basses ever based the payment amount on any current rental market data for similar houses. The only purported lease ever signed was the one 1994 lease-option contract which, the Lees argue, was immediately transmuted into a partially-executed option contract with the payment of the $13,000 as an exercise of the option.

■ The construction of the contract (the lease-option contract) is a question of law. *See Sonoma Mgmt. Co. v. Boessen*, 70 S.W.3d 475, 479 (Mo.App. W.D.2002). The parol evidence rule bars extrinsic evidence in construing an integrated contract, unless the contract is ambiguous. *Commerce Trust Co. v. Watts*, 360 Mo. 971, 231 S.W.2d 817, 820 (Mo.1950). The testimony of the Basses as to the background of the transaction was thus competent only to the extent that it provided background consistent with the terms of the contract or addressed any ambiguity in the contract. *See Sherman v. Deihl*, 193 S.W.3d 863, 866 (Mo.App.2006). It cannot be considered to alter or vary the clear terms of a written contract related to real estate. *Devino v. Starks*, 132 S.W.3d 307, 310 (Mo.App. 2004).

Included in the testimony of the Basses was the uncontradicted statement that the first signed agreement was abandoned and the lease-option agreement was executed second, in place of the other contract. Such testimony was admissible and relevant because it established the order of the two contracts signed the same day. Thus, the trial court did not err in concluding that the first agreement was not operative and that the operative agreement was the lease-option contract. We believe, however, for reasons discussed more fully below, that the court erred in its interpretation of the lease-option contract.

Some of the testimony of the Basses flatly contradicted the plain language of the lease-option contract. Such testimony was not competent to alter the plain terms of the contract. *Devino*, 132 S.W.3d at 310–11. For instance, the contract never provided that a $13,000 payment would secure only a purchase of *the right* to exercise an option. Rather, the contract specifically provides that the "downpayment" of $13,000 was for the *exercise* of the purchase option. Thus, pursuant to the plain terms of the contract, Rex Lee exercised his option to purchase the property by paying the $13,000 before he ever moved into the house. Moreover, contrary to the court's understanding, the contract specifically avoided setting a deadline for the closing of the sale transaction.

The contractual issues were made more difficult for the trial court because the parties failed to cite pertinent authority and principles of law to guide the court. Also, the parties did not always seem to recognize the significance of the fact that there were two versions of the lease-option agreement at trial, with slight but material differences. The contract produced by plaintiffs, a photostatic copy, indicated that the closing of the transaction was to take place "0" days after the exercise of the option; while the original contract produced by the Basses, and identified by Susan Bass (the drafter) as the original, left the closing of the transaction open-ended. The evidence showed, however, that the original lease-option contract produced by the Basses, and not the copy of the contract produced by the Lees, was the operative copy for the court to construe.

■ The plain language of the operative contract shows that the $13,000 payment was not a payment for the purchase of the right to exercise an option, but was a downpayment designed to constitute the *exercise* of the option itself. Consistent with that, a contractual provision left the date of the closing open-ended in accordance with the notion that the parties did not intend the contract to close until the mortgage was paid off, one way or another, at some future point.

Although those portions of the contract—arguably the most crucial portions for this case—were clear and unambiguous, the contract is also superficially (at least) ambiguous as to whether Rex Lee's monthly payments were rental payments or assumption payments. Paragraph 1 refers to Rex Lee making rent payments. In contrast, in paragraph 17 (in the sentence that begins, "If any default is made in the payment of rent . . ."), the words "of rent" are scratched out. Paragraph 17 is consistent with the notion that the parties were not considering the payments to be rent payments at that time, but were considering the payments to be mortgage assumption payments because Rex Lee had already exercised his option. Perhaps the parties were afraid to acknowledge within the document itself that Rex Lee had actually exercised his option, for fear that the contract would not provide the same degree of protection against the invocation of the due-on-sale clause. Therefore, possi-

bly they left that part of the agreement ambiguous—intentionally. In any event, the conflict between these two paragraphs arguably created confusion, whether intentionally or not.

■ Even if we consider the contract to be partly ambiguous and therefore requiring construction, however, we still, in the end, after looking at all the pertinent circumstances, conclude as a matter of law that Rex Lee exercised his option and thereby acquired equitable rights in the property. To the degree the contract was ambiguous, all the pertinent circumstances were and are to be considered:

> *Where ambiguity exists—latent or patent—the cardinal principle is to determine the intent of the parties. In order to determine the intent of the parties a court will consider the entire contract, subsidiary agreements, the relationship of the parties, the subject matter of the contract, the facts and circumstances surrounding the execution of the contract, the practical construction the parties themselves have placed on the contract by their acts and deeds, and other external circumstances that cast light on the intent of the parties.* [citations omitted].

*Royal Banks of Missouri v. Fridkin*, 819 S.W.2d 359, 362 (Mo. banc 1991).

Thus, in relation to the need for clarification the court here was required to consider all the pertinent parol evidence, including not only that portion of the Basses' testimony that was competent, but also the evidence of the option payment, and the documentary evidence of the earlier signed real estate contract that was abandoned in order to avoid the mortgagee's invocation of the due-on-sale clause. Also to be con-

sidered were the parties' subsequent actions in relation to one another. *Id.*

The trial court found simply that the Lees had not proved their case; the court did not say it found the Basses credible. The court's view of the failure of the evidence, however, was formed in the light of a misinterpretation of the option contract's provision concerning the exercise of the option and the documentary and testimonial evidence from the Basses that Rex Lee paid $13,000 at the time the contract was executed.

The plain language of specific portions of the contract, combined with evidence of the payment of the option exercise amount, and the substantial weight of the subsequent actions of the parties with respect to the contract, would necessitate the rejection of the notion that the Rex Lee, regardless of any superficial ambiguity in the contract, ever paid any rent *as a tenant. Unilateral* self-serving actions, such as the parties' respective treatments of the transaction for tax purposes, would necessarily and logically tend to carry less weight than the conduct of the parties between *themselves.*[2] Here, for the reasons mentioned above, the conduct of the parties between *themselves* is consistent with the exercise of the option. We accordingly conclude as a matter of law that, because of the clear language of the contract and the other factors mentioned above, that Rex Lee's $13,000 payment constituted the *exercise* of the option, which created for him equitable rights in the property.

The evidence shows that $13,000 would be an unduly large amount to pay for the purchase of a one-year option *right* on an $84,000 piece of property. It cannot be overlooked that $13,000 was the value of the Basses' equity in the property at that

---

**2.** The parties disparate tax treatment of the matter proves little or nothing. Perhaps it suggests that the parties each thought they could use the lease-option contract to substantiate their respective tax positions.

time. It is not a mere coincidence that the "downpayment" amount to be paid with the exercise of the option was the amount to compensate the Basses for their equity, with Rex Lee assuming responsibility for all liabilities and all other expenses related to the property. We also are entitled to consider the fact that the Basses had been attempting to sell the property for six months or so without success. Rex Lee at that time did not own a house, having recently gone through a divorce, and wanted to buy the Basses' house. The parties reached an agreement on Rex Lee paying $13,000 and assuming the mortgage. Rex Lee had the cash. There was no apparent reason for him to wait until later in the one-year period to exercise his option. It had been only because of the due-on-sale clause in the mortgage (which was discovered when Susan Bass called the mortgage company about the proposed transaction) that the parties restructured the transaction. The real intent of the parties is revealed in the documents, the payment of the $13,000, and the parties' actions as between themselves thereafter.

For all the foregoing reasons, we have a firm conviction that the trial court erred in determining that the $13,000 was for the purchase of the right to an option, and that the option itself was never exercised.

The Lees insist that the court must interpret the two contracts (the earlier proposed sale contract and the option contract) as one, a proposition for which, as the court noted, the Basses offered no testimonial support. The Lees misunderstand. No principle of law presented by the Lees requires that the two contracts be construed together. The earlier signed contract, however, was properly considered, as we have said, to the extent that the lease-option contract was ambiguous or uncertain. The abandoned contract merely provided background information for purposes of clarification.

With no specified date for the closing of the transaction, Rex Lee's equitable interest under the contract would continue past the one-year "lease" term until such time as he has been declared to be in default under the terms of the agreement, or until the transaction had closed. There is no evidence that Rex Lee ever was declared to be in default, as to any payments. Although the Basses *testified* that Rex Lee failed to exercise his option within the one year period provided by the contract, that testimony was contradictory to the undisputed fact of the $13,000 "downpayment," the clear language of the contract, and the overall weight of the other evidence as well. The testimony of the Basses that Rex Lee remained in the property only as a month-to-month tenant must be rejected.

No issue was raised in this case as to whether the right to equitable relief in this case is affected by public policy considerations involving the due-on-sale clause. Because no one argues that a mortgagee's rights with regard to such a provision are absolute, or that there is a public policy interest to be protected here, we see no reason to raise the issue *sua sponte*.

Pursuant to the option contract, Rex Lee owned an interest in the property. The contract specified no closing date. The trial court, because of a misinterpretation of the contract, did not recognize that the Lees demonstrated the existence of equitable rights in the property. Therefore, we will reverse the judgment and remand the case to the trial court for further proceedings in light of the fact that the payment of $13,000 under the contract created equitable rights in Rex Lee which have not been shown to have been extinguished.

## Conclusion

We determine that the trial court misapplied the law in its interpretation of the lease-with-option contract. We reverse the judgment and remand the case to the trial court for further proceedings.

NEWTON and HARDWICK, JJ., concur.